Marc LEVY, Petitioner

v.

**SENATE OF PENNSYLVANIA,**
**Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 9, 2014.
Decided June 16, 2014.

438

Gayle C. Sproul, Philadelphia, for petitioner.

Matthew H. Haverstick, Philadelphia, for respondent.

BEFORE: ROBERT SIMPSON, Judge, and PATRICIA A. McCULLOUGH, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Judge SIMPSON.

This Right–to–Know Law (RTKL)[1] case, which involves a journalist's request for legislative records[2] relating to the legal representation of Senate Democratic Caucus employees, is before us following a remand from our Supreme Court in *Levy v. Senate of Pennsylvania*, 619 Pa. 586, 65 A.3d 361 (2013) (*Levy*). In *Levy*, the Supreme Court affirmed our decision[3] regarding the applicability of the attorney-client privilege to client identities and descriptions of legal services; however, it reversed our decision to the extent we determined additional bases for nondisclosure were waived. On remand, we consider these alternate bases for nondisclosure, specifically, the work-product doctrine, grand jury secrecy, and the criminal investigation exception of the RTKL. After careful consideration, we hold none of these alternate grounds support the Senate of Pennsylvania's (Senate) redactions of all client identities or general descriptions of legal services in the documents requested.[4]

## I. Background

Marc Levy (Levy), a journalist, requested documents relating to the legal repre-

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

2. Section 102 of the RTKL, 65 P.S. § 67.102, defines "legislative record" to include a financial record relating to the legislative agency. Additionally, Section 102 defines "legislative agency" to include the Senate.

3. *Levy v. Senate of Pa.*, 34 A.3d 243 (Pa. Cmwlth.2011) (*en banc*) (*Levy I*).

4. This Court originally filed an opinion and order in this matter on January 15, 2014, in which we affirmed the final determination of the Senate Appeals Officer. The Senate peti-

sentation of Senate Democratic Caucus employees under the RTKL. Specifically, the request sought all bills, contracts and payment records relating to the hiring of any outside lawyer or law firm to represent Senator Robert J. Mellow and any current or former employee of the Senate Democratic caucus beginning January 1, 2009.

The Senate Open Records Officer responded to the request by producing five sets of financial records relating to five clients employed by the Senate, who were provided with outside counsel pursuant to the Senate Committee on Management Operations (COMO) Policy for the Payment of Legal Services. However, the Senate Open Records Officer redacted portions of the documents, primarily, the names of the five clients and the description of legal services, on the basis of attorney-client privilege.

Levy appealed to the Senate Appeals Officer and asserted the redacted information was not privileged. The Senate responded the information was properly redacted under the attorney-client privilege, as well as work-product doctrine, grand jury secrecy, and an exception relating to criminal investigation. The Senate Appeals Officer could not conclude whether the attorney-client privilege applied, and he permitted the Senate to provide supplemental affidavits and unredacted records, but he did not specify a time in which to do so. As for the other asserted grounds for redaction, the Senate Appeals Officer determined that there was insufficient evidence to support a determination that the work-product doctrine protected the client or the information in question, that grand jury secrecy should attach, or that the records were exempt as relating to a criminal investigation.

On the 29th day after the Senate Appeals Officer's final determination, Levy appealed to this Court. At that point, neither supplemental affidavits nor unredacted records had been produced by the Senate.

On appeal, an *en banc* panel addressed the application of the attorney-client privilege to the documents. However, relying on *Signature Information Solutions v. Aston Township*, 995 A.2d 510 (Pa. Cmwlth.2010), *abrogated by Levy*, we did not address the remaining privileges and exceptions on the basis the Senate waived these alternate reasons by not asserting them in its initial RTKL response.

In consideration of the attorney-client privilege, we received additional evidence in the form of an affidavit and unredacted records, and we appointed a Special Master[5] to review the unredacted documents *in camera*. Ultimately, in accordance with the recommendations of the Special Master, we determined the attorney-client privilege did not shield names of clients or general descriptions in the legislative records, and we reversed this portion of the Senate Appeals Officer's determination. However, to the extent the redactions shielded specific descriptions of legal services that implicated confidential communications, we upheld the redactions under

---

tioned for reargument and reconsideration. By order dated February 27, 2014, we granted reconsideration, withdrew the opinion and order, and directed the parties to file supplemental briefs limited to the issue of whether the client identities in the Senate's legal billing records are entitled to protection under

*federal* grand jury secrecy rules. This opinion addresses the federal grand jury issue as well as the issues previously addressed in our withdrawn opinion.

**5.** The Honorable James R. Kelley, Senior Judge, served as special master.

the attorney-client privilege.[6] Thus, we affirmed in part and reversed in part the final determination of the Senate Appeals Officer.

The Senate petitioned for allowance of appeal to the Supreme Court. The Supreme Court affirmed our decision regarding the applicability of the attorney-client privilege to client identities and descriptions of legal services. However, to the extent we determined that any reasons for denial not raised in the initial written denial of a RTKL request were waived and could not be raised at a later stage of the RTKL process, the Supreme Court reversed and abrogated this Court's holding in *Signature Information. Levy; see McClintock v. Coatesville Area Sch. Dist.*, 74 A.3d 378 (Pa.Cmwlth.2013) (recognizing abrogation). The Supreme Court remanded to this Court for consideration of the additional reasons for denial raised by the Senate before the Senate Appeals Officer. *Levy.*

On remand, the Senate requested this Court to further remand the matter to the Senate Appeals Officer to allow it to supplement the evidentiary record in support of its argument that the records still at issue are exempt or barred from disclosure by privilege or exception under the RTKL. This Court, speaking through Senior Judge Colins, President Judge Emeritus, denied the request for further remand, explaining the Senate maintained through- out the appeals process that the record before the Senate Appeals Officer was sufficient to resolve its legal claims concerning the additional bases for non-disclosure. *Levy v. Senate of Pa.* (Pa.Cmwlth., No. 2222 C.D.2010, filed August 5, 2013) (single judge opinion). However, the Court allowed the parties to file supplemental briefs on the application of the work-product doctrine, grand jury secrecy and criminal investigation exception to address recent developments in the RTKL. *Id.*

 We now consider the alternate reasons for nondisclosure raised by the Senate to the Senate Appeals Officer in ascertaining the propriety of these redactions.[7] At this juncture, the remaining redactions for review fall into two categories: (1) client identity, and (2) general descriptions of the legal services provided.

## II. Issues

The Senate argues once a record is found to be privileged or exempt in part under the RTKL, then the entire record is entitled to protection, and the Senate cannot be compelled to alter its redactions. Additionally, the Senate contends the redactions to client identities and general description of legal services are proper under the work-product doctrine, grand jury secrecy, and criminal investigation exception.

*Levy I*, 34 A.3d at 257.

---

**6.** Specifically, the Special Master recommended:

> To the extent that the documents specify the issues or laws researched by the attorneys, specific services provided and the names of the individuals with whom the attorneys communicated, ... such information has the potential to reveal the confidential communications shared by attorney and client, the motive of the client in seeking representation and litigation strategy, and is privileged.

**7.** For a question of law under the RTKL, our scope of review is plenary. *Padgett v. Pa. State Police*, 73 A.3d 644 (Pa.Cmwlth.2013). In reviewing matters under Section 1301 of the RTKL, 65 P.S. § 67.1301 (pertaining to a Commonwealth agency, a legislative agency or a judicial agency), we act in our appellate jurisdiction, but we independently review the agency's orders, and we may substitute our own findings of fact. *Padgett.*

## III. Discussion

### A. Records Not Public

First, the Senate argues once a record is found to be privileged or exempt in *any* part under the RTKL, the Senate can withhold the entire record, and it cannot be compelled to alter its redactions. The discretion to produce redacted versions of otherwise privileged or exempt records lies exclusively with the agency possessing the records. In other words, once a record is determined to contain privileged or exempt information under the RTKL, the agency does not need to produce it at all; but, if it chooses to do so, then discretion to redact lies solely with the agency. Applied here, because the documents contain protected information, the Senate cannot be compelled to produce the records in unredacted form; consequently, the Senate cannot be directed to alter its voluntary redactions.

Levy counters the Senate's argument is not only waived, but outside of the scope of the Supreme Court's remand, and it is wrong on the merits. The Senate argues for the first time that, to the extent certain records at issue contain some material subject to exemption or privilege, they need not be produced at all, whether in redacted form or otherwise. By not previously raising this argument at any prior stage in the proceeding, the Senate waived this argument. Moreover, the issue is beyond the scope of the Supreme Court's remand order, which directed this Court to consider whether the redactions can stand under the alternate reasons for denial raised by the Senate before the Senate Appeals Officer. As the Senate did not raise this issue, it cannot be considered on remand. Finally, Levy asserts, the Sen-

ate's position is wrong as a matter of law because it would make the redaction provisions, contained in Section 706 of the RTKL, 65 P.S. § 67.706, superfluous.

### 1. Waiver

Before the Senate Appeals Officer, and before this Court previously on its initial appeal, the Senate asserted four grounds in support of its redactions: attorney-client privilege; work-product doctrine; grand jury secrecy; and criminal investigation exception. On remand, the Senate now asserts for the first time that once a record is found to be privileged in part, the entire record can be withheld.[8]

In its decision in *Levy,* our Supreme Court abrogated the *per se* waiver rule previously embraced in *Signature Information* (waiver if defense to disclosure not raised in initial denial letter) and its progeny. However, the Court was careful not to totally reject waiver in RTKL proceedings. In fact, the Court applied waiver to reject a challenge to the *in camera* review process that was not first raised in the Commonwealth Court. *Levy,* 65 A.3d at 366 n. 4. Thus, waiver may still be applied to RTKL cases where appropriate.

Before the Supreme Court in *Levy,* the Senate asserted "that an agency must raise all its challenges before 'the appeals officer closes the time for submissions' and 'takes the matter under advisement.'" *Id.* at 377 (quoting Senate Br. at 25–26 n. 17). There is some merit to this assertion.

■ We agree that an agency must raise all its challenges before the fact-finder closes the record. This will allow efficient receipt of evidence from which facts may be found to resolve the chal-

---

**8.** Although the Pennsylvania School Boards Association attempted to raise this issue in its friend-of-the-court brief before the Supreme Court, the Court refused to consider it be-

cause "it was not raised by the Senate." *Levy v. Senate of Pa.,* 619 Pa. 586, 65 A.3d 361, 369 n. 7 (2013).

lenges. In the ordinary course of RTKL proceedings, this will occur at the appeals officer stage, and a reviewing court will defer to the findings of the appeals officer. *See Bowling v. Office of Open Records*, 75 A.3d 453, 473–74 (Pa.2013) (describing success of administrative regime of RTKL; concluding most disputes will end at appeals officer level); *see also id.* at 477 (concurring op. by Saylor, J., favoring wide latitude in appeals officer discretion and deference to administrative-level developments); *id.* at 478–79 (dissenting op. by Castille, C.J., expressing concern about fact-finding in the Commonwealth Court in RTKL cases). In the rare, extraordinary case in which the initial reviewing court must act as a fact-finder, an agency must raise all its challenges before the close of evidence before the court.

■ Here, this Court acted as a fact-finder when, on appeal from the Senate Appeals Officer, it conducted *in camera* review of unredacted copies of the billing records in question. After review, the record was closed, and a decision was issued. On remand, this Court declined to arrange for re-opening of the record. Thus, the time to raise new challenges to disclosure of the billing records is past. Challenges not previously raised before the fact-finder are waived. This resolution is consistent with our Supreme Court's application of waiver in this case, as described above.

### 2. Scope of Remand

Moreover, as an alternative procedural basis for our ruling, we conclude that the Senate's new challenge is beyond the scope of the Supreme Court's remand order.

■ Where a case is remanded for a specific and limited purpose, "issues not encompassed within the remand order" may not be decided on remand. *In re Indep. Sch. Dist. Consisting of the Borough of Wheatland*, 912 A.2d 903, 908 (Pa.

Cmwlth.2006) (quoting *Budd Co. v. Workers' Comp. Appeal Bd. (Kan)*, 858 A.2d 170, 180 (Pa.Cmwlth.2004)). A remand does not permit a litigant a "proverbial second bite at the apple." *Emery Worldwide v. Unemployment Comp. Bd. of Review*, 115 Pa.Cmwlth. 554, 540 A.2d 988, 990 (1988).

■ Here, the Supreme Court remanded "for consideration of the additional reasons for denial *raised by the Senate to the Senate Appeal's Officer.*" *Levy*, 65 A.3d at 383 (emphasis added). As mentioned above, this new challenge was not submitted to the Senate Appeals Officer. Thus, it is beyond the scope of our Supreme Court's remand order.

Because of our holdings on the problems associated with the procedures of raising a new issue now, we do not need to discuss at length the merits of the Senate's new challenge. It is sufficient for current purposes to note that the Supreme Court in this case expressed doubts about the merits, albeit in *dicta*. Thus, when the Supreme Court declined to consider this argument on appeal, it noted "this argument would seemingly make the redaction provisions of the RTKL superfluous." *Levy*, 65 A.3d at 369 n. 7.

### B. Work-product doctrine

Next, the Senate asserts the redactions are proper under the work-product doctrine because the withheld material reveals the attorneys' mental impressions, theories, notes, strategies and research. The Senate argues the work-product doctrine extends the general descriptions of work performed, which were excluded from exemption under attorney-client privilege. According to the Senate, knowing that an attorney made a telephone call, drafted a memo, reviewed a letter, or even reviewed the public docket entries on a particular

date reveals what the attorney was doing on a case and what he deemed to be a vital activity in servicing the client's needs. Therefore, these general descriptions are protected by the work-product doctrine.

Levy counters that the work-product doctrine does not extend to the general descriptions of legal services. Following the redactions to specific descriptions, all that remains is the general nature of services performed, e.g., memo, telephone call, research, etc. Such general, non-substantive descriptions do not reveal the attorneys' mental impressions, conclusion, opinions, memoranda, notes, summaries, legal research or legal theories. Levy maintains the work-product doctrine is not intended to protect such mundane and uninforming entries in billing records.

■ Section 102 of the RTKL, 65 P.S. § 67.102, defines a "legislative record" to include the financial records of the Senate. Pursuant to Section 305(b) of the RTKL, a legislative record in the Senate's possession is presumed to be available for disclosure under the RTKL, unless:

(1) the record is exempt under section 708;

(2) the record is protected by a privilege; or

(3) the record is exempt from disclosure under any other Federal or State law, regulation or judicial order or decree.

65 P.S. § 67.305(b). In turn, the term "privilege" is defined in Section 102 of the RTKL as:

The *attorney work-product doctrine*, the attorney-client privilege, the doctor-patient privilege, the speech and debate privilege or other privilege recognized by a court incorporating the laws of this Commonwealth.

65 P.S. § 67.102 (emphasis added). The burden of proving the privilege rests with the party asserting it. *Heavens v. Pa.*

*Dep't of Envtl. Prot.*, 65 A.3d 1069 (Pa. Cmwlth.2013).

■ Application of the attorney work-product doctrine is described in Pa. R.C.P. No. 4003.3, which precludes "disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories." In the RTKL context, the doctrine protects the "mental impressions, theories, notes, strategies, research and the like created by an attorney in the course of his or her professional duties, particularly in anticipation or prevention of litigation" from disclosure. *Heavens*, 65 A.3d at 1077 (citing *Gillard v. AIG Ins. Co.*, 609 Pa. 65, 15 A.3d 44 (2011)).

■ The work-product doctrine, while closely related to the attorney-client privilege, provides broader protection. *Dages v. Carbon Cnty.*, 44 A.3d 89 (Pa. Cmwlth.2012). "The doctrine protects any material prepared by the attorney 'in anticipation of litigation,' regardless of whether it is confidential." *Id.* at 93 n. 4 (quoting *Nat'l R.R. Passenger Corp. v. Fowler*, 788 A.2d 1053, 1065 (Pa.Cmwlth. 2001)). "The underlying purpose of the work product doctrine is to guard the mental processes of an attorney, providing a privileged area within which he can analyze and prepare his client's case." *Commonwealth v. Sandusky*, 70 A.3d 886 (Pa.Super.), *appeal denied*, 81 A.3d 77 (Pa. 2013). The purpose is not to shield "mundane and uninforming entries in ... billing records," such as the bare fact that a telephone conference occurred. *See Valenti v. Allstate Ins. Co.*, 243 F.Supp.2d 200, 218 (M.D.Pa.2003) (disapproving redactions asserted under the work-product doctrine for "clearly non-privileged ... rote descriptive entries").

■ Here, the Senate argues the general descriptions of legal services are entitled to protection under work-product doctrine because the items reflect work performed by the attorney. We do not agree. Although the general descriptions such as drafting a memo, making telephone call, performing research, observing a trial, reflect work performed, without further detail [9] they do not reveal an attorney's "mental impressions, theories, notes, strategies, research and the like." *Heavens*, 65 A.3d at 1077. Disclosure of the general tasks performed in connection with the fee charged reveals nothing about litigation strategy. They simply explain the generic nature of the service performed and justify the charges for legal services rendered. Where, as here, the taxpayers are footing the bill for the legal services, they are entitled to know the general nature of the services provided for the fees charged. *See Tribune–Review Publ'g Co. v. Bodack*, 599 Pa. 256, 961 A.2d 110, 117 (2008) (providing "the public has an interest in monitoring how public officials use public property"); *Pa. State Univ. v. State Emps.' Ret. Bd.*, 594 Pa. 244, 935 A.2d 530, 540 (2007) (providing there "can be no reasonable expectation that the Commonwealth will keep its finances secret from the general public"). Thus, we conclude such rote entries regarding the general nature of legal services performed are not entitled to protection under the work-product doctrine.

### C. Grand Jury Secrecy

Next, the Senate claims redactions of client identities are protected by grand jury secrecy rules, under both state and federal law. According to the Senate, the name of a witness before an ongoing grand jury investigation is protected by grand jury secrecy. Although a witness is free to discuss his own testimony, he cannot be compelled to reveal his testimony. Likewise, a witness cannot be compelled to reveal his appearance before a grand jury. Therefore, grand jury secrecy demands redaction of the client identities from the documents.

Levy counters that merely knowing that the communication between the attorney and client involved a grand jury investigation does not disclose confidential communications between the client and the attorney, regarding strategy or legal tactics. Levy also argues the mere fact that a client is seeking counsel regarding a grand jury investigation does not implicate the client in criminal activity or reveal matters occurring before the grand jury.

Under the RTKL, records are protected due to the presence of a "privilege recognized by a court interpreting the laws of this Commonwealth" or an exemption from disclosure "under any other *Federal or State law.*" Section 102 of the RTKL, 65 P.S. § 67.102 (definition of "privilege"); Section 305(b) of the RTKL, 65 P.S. § 67.305(b)(3) (emphasis added); *accord* Section 506(c)(1)(i) & (2) of the RTKL, 65 P.S. § 67.506(c)(1)(i) & (2).

The Senate bears the burden of proving the existence of a grand jury privilege. *See Heavens.* In support of its claim of exemption, the Senate relies on both federal and state grand jury laws.

### 1. Federal Grand Jury Secrecy

Proceedings before a federal grand jury are protected by Rule 6 of the Federal Rules of Criminal Procedure. Fed. R.Crim.P. 6. Rule 6(e)(6) provides, "[r]ecords, orders and subpoenas *relating to*

---

**9.** The redactions pertaining to the specific descriptions of legal services, such as the subject of the memo, who was called, the nature of the researched performed, identification of the trial attended, were previously upheld under the attorney-client privilege.

*grand-jury proceedings* must be kept under seal to the extent and as long as necessary *to prevent the unauthorized disclosure of a matter occurring before a grand jury."* Fed.R.Crim.P. 6(e)(6) (emphasis added). This rule applies even to records that were not before the grand jury if "access to those ... records would jeopardize grand jury secrecy." *United States v. Smith,* 123 F.3d 140, 149 (3d Cir.1997).

Further, Rule 6(e)(2)(A) provides, "[n]o obligation of secrecy may be imposed on any person except in accordance with Rule 6(e)(2)(B)." Fed.R.Crim.P. 6(e)(2)(A). Subsection (B) prohibits the following persons from *disclosing a matter occurring before the grand jury:* "(i) a grand juror; (ii) an interpreter; (iii) a court reporter; (iv) an operator of a recording device; (v) a person who transcribes recorded testimony; (vi) an attorney for the government; or (vii) a person to whom disclosure is made under Rule 6(e)(3)(A)(ii) or (iii)." Fed.R.Crim.P. 6(e)(2)(B) (emphasis added). However, witnesses are not included in the list. *See id.* Thus, "[w]itnesses are not under the prohibition unless they also happen to fit into one of the enumerated classes." *United States v. Sells Eng'g, Inc.,* 463 U.S. 418, 425, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983).

The rationales for grand jury secrecy are well established:

(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before the grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect [the] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*Douglas Oil Co. v. Petrol Stops Nw.,* 441 U.S. 211, 219 n. 10, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979) (brackets, quotation and citation omitted); *accord United States v. Procter & Gamble Co.,* 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958).

The Senate cites several federal cases for the proposition that the identity of a witness who testifies before a federal grand jury is protected from disclosure. *See McDonnell v. United States,* 4 F.3d 1227 (3d Cir.1993); *Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.,* 656 F.2d 856 (D.C.Cir.1981); *Sec. & Exch. Comm'n v. Dresser Indus., Inc.,* 628 F.2d 1368 (D.C.Cir.1980). However, a closer examination of these cases, while instructive, does not compel the result the Senate seeks.

For instance, in *McDonnell,* an individual made a federal Freedom of Information Act (FOIA)[10] request to the Navy and the Justice Department seeking historic records related to the sinking of a ship in the 1930s. The records included, among other things, the names of individuals subpoenaed to testify before a grand jury. The Justice Department refused to make the records available, arguing they were grand jury materials subject to secrecy under the federal rule of criminal procedure; thus, they were exempt from disclosure under FOIA.

On appeal, the Third Circuit Court of Appeals determined the records were not

10. 5 U.S.C. § 552.

subject to disclosure, but not because the records contained the witnesses' identities as asserted by the Senate. Rather, in its analysis, the Court determined the records at issue were exempt because they related to grand-jury proceedings *and* the Justice Department fell within the category of persons listed under Fed.R.Crim.P. 6(e)(2)(B) prohibited from disclosing such information.

Similarly, in *Fund for Constitutional Government*, the requester requested investigatory reports obtained by the Watergate Special Prosecution Force (WSPF) for use in grand jury investigations. The reports named or identified grand jury witnesses, quoted or summarized grand jury testimony, evaluated testimony, discussed scope, focus and direction of grand jury investigations, and identified documents considered by the grand jury and conclusions reached as result of grand jury investigations.

The District of Columbia Court of Appeals determined the reports fell within broad reach of grand jury secrecy under the federal rule and were exempt from disclosure under FOIA. The Court explained the reports in WSPF's possession were not obtained for any independent purpose but were obtained for use in grand jury investigations; thus, the reports related to matters occurring before the grand jury. In addition, the Court noted the federal rule's prohibition on the disclosure applied to WSPF because it had access to the information by virtue of WSPF's participation in the grand jury investigation.

Likewise, in *Dresser*, the District of Columbia Court of Appeals stated, with emphasis added:

> We note that the Rule prohibits disclosure of matters occurring before the grand jury. This serves to protect the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like. It *does not require, however, that a veil of secrecy be drawn over all matters occurring in the world that happen to be investigated by a grand jury.*

628 F.2d at 1382 (quotation and footnote omitted). The Court continued:

> Dresser's documents at issue ... were created for an independent corporate purpose, not directly related to the prospect of a grand jury investigation. The [Securities and Exchange Commission] has subpoenaed them directly from Dresser, without mention of the grand jury. They do not reveal what occurred before the grand jury; they reveal what occurred in Dresser's foreign operations.

*Id.* at 1383.

With the redactions at issue here (found in just a small set of records: Supplemental Reproduced Record (S.R.R.) at 140a–141a, 143a, 144a & 145a–146a), the only dispute is whether the clients who sought legal advice regarding a grand jury investigation under the Senate's COMO policy are protected by the grand jury secrecy rules. Although the words "Grand Jury Investigation" appear in the redacted documents, *see* S.R.R. at 140a, there is nothing in the documents that connects the clients' identities to secret grand jury material. As our Supreme Court observed, "[n]othing was revealed other than the fact of counsel's engagement and that it related to a grand jury investigation." *Levy*, 65 A.3d at 372.

 Unlike the records at issue in *McDonnell* and *Fund for Constitutional Government*, the Senate's billing records are not matters "relating to grand-jury proceedings." See Fed.R.Crim.P. 6(e)(6). Rather, similar to the records in *Dresser*, the billing records at issue were created

for an independent purpose—to provide a cost summary for legal services provided. Although the billing records reference fees charged for legal services provided in connection with a grand jury investigation, the records do not relate to the grand jury investigation.

Moreover, the redacted records do not establish that a client was subpoenaed as a witness in a federal grand jury proceeding. Even if such a fact were assumed, however, this does not transform the billing record into a record relating to a grand jury proceeding. Thus, revealing the name of the client in the Senate's billing records does not constitute the "unauthorized disclosure of a matter occurring before a grand jury." *See* Fed.R.Crim.P. 6(e)(6).

Finally, nothing in the record establishes that either the Senate itself or any of its employees or former employees is subject to the grand jury secrecy requirement. Thus, federal law imposes "[n]o obligation of secrecy" on them. Fed. R.Crim.P. 6(e)(2). Based on our review of federal law, we find no support to maintain the secrecy of the client identities.

### 2. State Grand Jury Secrecy

In Pennsylvania, proceedings before a state grand jury are likewise protected. *In re Dauphin Cnty. Fourth Investigating Grand Jury*, 610 Pa. 296, 19 A.3d 491 (2011). Like the federal rule, Section 4549 of the Investigating Grand Jury Act (Grand Jury Act), 42 Pa.C.S. § 4549, limits the circumstances under which matters occurring before an investigating grand jury may be disclosed. Specifically, Section 4549(b) provides, with emphasis added:

> Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the Commonwealth for use in the performance of their duties. The attorneys for the

Commonwealth may with the approval of the supervising judge disclose matters occurring before the investigating grand jury including transcripts of testimony to local, State, other state or Federal law enforcement or investigating agencies to assist them in investigating crimes under their investigative jurisdiction. Otherwise a juror, attorney, interpreter, stenographer, operator of a recording device, or any typist who transcribes recorded testimony may disclose matters occurring before the grand jury only when so directed by the court. *All such persons shall be sworn to secrecy, and shall be in contempt of court if they reveal any information which they are sworn to keep secret.*

42 Pa.C.S. § 4549(b). The rationale for secrecy in Pennsylvania is the same as that enunciated under federal law. *In re Investigating Grand Jury of Phila. Cnty.*, 496 Pa. 452, 437 A.2d 1128, 1130 (1981) (quoting *Procter & Gamble Co.*, 356 U.S. at 681 n. 6, 78 S.Ct. 983 (1958)).

Like its federal counterpart, the veil of secrecy surrounding state grand jury proceedings, while broad, is not absolute. *See* Section 4549 of the Grand Jury Act, 42 Pa.C.S. § 4549. Secrecy applies only to prevent the unauthorized disclosure of *"matters occurring before the grand jury."* 42 Pa.C.S. § 4549(b) (emphasis added); *see Com. v. Columbia Invest. Corp.*, 457 Pa. 353, 325 A.2d 289 (1974).

Similar to the federal rule, the oath of secrecy is administered to grand jurors, court personnel, and those who assist in the proceedings or who are to be present while the grand jury is in session. *See* Pa. R.Crim. P. 224, 225, 231(c). However, witnesses are not subject to the secrecy oath. *See* Pa. R.Crim. P. 227. Indeed, the Grand Jury Act provides: "No witness shall be prohibited from disclosing his testimony before the investigating grand jury

except for cause shown in a hearing before the supervising judge." Section 4549(d) of the Grand Jury Act, 42 Pa. C.S. § 4549(d).

Nevertheless, relying on *In re November, 1975 Special Investigating Grand Jury*, 299 Pa.Super. 539, 445 A.2d 1260 (1982), the Senate argues grand jury secrecy protects the identities of the clients in the billing statements. In *In re November*, a candidate for the Philadelphia City Controller's office filed an action to compel testimony by the opposing candidate regarding his prior grand jury testimony. The candidate-petitioner argued that, because a grand jury witness is not prohibited from releasing his own testimony, the witness can be compelled to appear at a hearing and questioned about his testimony. The Superior Court rejected this argument and held Section 4549(d) of the Investigating Grand Jury Act, "in permitting such voluntary disclosure by a witness, simply cannot be construed to support the actions of another person who institutes an action to force disclosure by compelling the witness to take the stand to declare in a public forum whether or not he or she will disclose his or her testimony before the grand jury." *Id.* at 1262.

The Senate argues the principles of the *In re November* decision should apply with equal force here. We disagree. Unlike in *In re November*, Levy is not attempting to compel disclosure of the *substance* of a witness's grand jury testimony. Rather, he is merely attempting to obtain the client identities in the Senate's billing records. Moreover, in *In re November*, the witness's identity was known, and there is no discussion in that case regarding the need to protect the witness's identity.

Based on our review of the law, Pennsylvania's grand jury secrecy laws do not compel a different result than that reached above under federal law. Even assuming the client was subpoenaed as a witness in a state grand jury proceeding, for the same reasons discussed above, the Senate's billing records do not relate to or implicate a "matter occurring before a grand jury." 42 Pa.C.S. § 4549(b). Moreover, neither the Senate itself nor any of its employees is subject to Pennsylvania's grand jury secrecy requirement. *See* Pa. R.Crim. P. 224, 225, 231(c); *Castellani v. Scranton Times, L.P.*, 598 Pa. 283, 956 A.2d 937 (2008) (holding only the grand jury participants are bound by the oath of secrecy).

For these reasons, we conclude the Senate failed to prove an exemption for the client identities contained in its billing records under federal or state grand jury secrecy laws. Thus, we affirm the decision of the Senate Appeals Officer on this issue.

### D. Criminal Investigation Exception

Finally, the Senate argues the criminal investigation exception protects client identities and general description of legal services because the information related to or resulted in a criminal investigation.

The records at issue relate to two different criminal investigations, albeit not conducted by the Senate. The Senate claims the client names and general activities taken by an attorney on a particular day would improperly reveal the progress of the criminal investigation. According to the Senate, knowledge that an attorney conducted research or observed a trial would reveal the progress of the criminal investigation by showing the government's continued focus on a particular witness or subject. Additionally, the Senate contends disclosing the clients' identities will reveal that a criminal inquiry has been opened, the scope of the criminal probe, and perhaps how far it has progressed. As such, both client identities and the general descriptions of legal services should be protected under the criminal investigation exception.

Levy counters that the criminal investigation exception does not extend to the Senate's billing records. The billing records are not records of a criminal investigation. The billing records do not relate to any law enforcement functions of the Senate. To date, the exception has only been extended to protect records of the agency carrying out the investigation.

The criminal investigation exception is set forth in Section 708(b)(16) of the RTKL. In relevant part, the exception provides that a record is exempt from access if it is:

A record of an agency relating to or resulting in a criminal investigation, including:

\* \* \*

(iv) A record that includes information made confidential by law or court order.

\* \* \*

(vi) A record that, if disclosed, would do any of the following:

(A) Reveal the institution, progress or result of a criminal investigation, except the filing of criminal charges.

Section 708(b)(16)(iv) & (vi)(A) of the RTKL, 65 P.S. § 67.708(b)(16)(iv) & (vi)(A). A record that is a "financial record" must still be produced, but the criminal investigation information may be redacted. 65 P.S. § 67.708(c). The legislative agency bears the burden of proving application of the exception to the documents by a "preponderance of the evidence." 65 P.S. § 67.708(a)(2).

Here, the Senate asserts 10 records are subject to the criminal investigation exception because they reference a grand jury investigation. Resp't's Br., App. A, at 2; S.R.R. at 114a, 115a–116a, 122a–124a, 128a–132a, 135a–137a, 138a–139a, 140a–141a, 143a, 144a, 145a–146a. Of those 10, nine are financial records and one is an engagement letter, S.R.R. at 140a–141a. The Senate argues the exception applies to some records on the basis they are confidential by law under the grand jury secrecy rules, and to all records as they would reveal the institution or progress of a criminal investigation.

As to the grand jury secrecy, for the reasons set forth above, the Senate did not establish an exemption under this theory. By extension, the redactions cannot stand under the criminal investigation exception as a "record that includes information made confidential by law or court order," 65 P.S. § 67.708(b)(16)(iv), on the basis of grand jury secrecy.

■ As to revealing the institution or progress of a criminal investigation, neither the client identities nor the general descriptions of services performed reveal the institution or progress of a criminal investigation. The records at issue are bills or an engagement letter and do not relate to any "law enforcement functions" of the Senate. *Cf. Galloway v. Office of Pa. Atty. Gen.*, 63 A.3d 485, 487 (Pa. Cmwlth.2013) (records protected from disclosure under criminal investigation exception because the request pertained to the law enforcement functions of the OAG).

To the extent the documents reference and arguably "relate to" a criminal investigation conducted by another agency, the records themselves do not contain any investigatory material. The Senate offered no evidence linking these portions of the billing records to any criminal investigation. Contrary to the Senate's assertions, the general, non-substantive descriptions of legal services, such as making a telephone call and drafting a memo, do not reveal the institution or progress of the grand jury investigation. Rather, the descriptions merely reveal the attorneys'

general activities in providing legal advice to the clients.

We are equally unpersuaded as to the Senate's claims that the client identities would reveal the government's interest in a particular person. Although the Senate argues the client identities are entitled to protection because the records were generated in connection with the legal defense undertaken in response to a criminal investigation, this is not a fact in evidence. Again, the records reveal nothing other than the fact of counsel's engagement and that it pertained to a grand jury investigation. Thus, we conclude the Senate failed to provide sufficient factual justification for the redactions under the criminal investigation exception.

### IV. Conclusion

For the reasons stated above, we determine that the Senate waived the issue that its records are exempt from disclosure in their entirety by not raising it before the fact-finder and that the issue exceeds the scope of the Supreme Court's remand order. Additionally, we conclude none of the Senate's alternate grounds support the redactions of client identities or general descriptions of legal services.

Accordingly, we affirm the decision of the Senate Appeals Officer as to the additional reasons for denial raised by the Senate to the Senate Appeals Officer.

Judges COHN JUBELIRER and LEAVITT did not participate in the decision in this case.

### ORDER

**AND NOW,** this 16th day of June, 2014, the final determination of the Senate Appeals Officer is **AFFIRMED** as to the additional reasons for denial raised by the Senate to the Senate Appeals Officer.

CONCURRING & DISSENTING OPINION BY Senior Judge JAMES GARDNER COLINS.

I concur with the scholarly opinion of the majority, except for its insertion of the identities of the clients contained in the billing statements relating to the Commonwealth grand jury representation.

I believe that the identities of the witnesses called to the Commonwealth grand jury proceedings should be redacted from the itemized billing records.