# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Angela Couloumbis, Spotlight PA, : | |
| Sam Janesch and The Caucus, : | |
| Petitioners : | |
| : | |
| v. : | No. 1425 C.D. 2022 |
| : | ARGUED: September 11, 2023 |
| Pennsylvania Office of General : | |
| Counsel (Office of Open Records), : | |
| Respondent : | |

BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE STACY WALLACE, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## <u>OPINION NOT REPORTED</u>

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                    **FILED:  July 23, 2024**

This matter concerns application of the Right-to-Know Law[1] (RTKL) to subject matter lines on outside law firm invoices requested from the Pennsylvania Office of General Counsel (OGC).  With respect to certain invoices that we have inspected *in camera*, we direct the release of copies of those records with the subject matter lines unredacted.  With respect to the balance of the invoices, which we have not reviewed, we vacate the order of Office of Open Records (OOR) and remand for an *in camera* review of the documents in question to determine if the subject matter lines are subject to the attorney-client privilege.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

*Background*

In January 2022, Angela Couloumbis, Spotlight PA, Sam Janesch, and The Caucus[2] (collectively, Requesters), submitted a request to OGC seeking the disclosure of "[e]ngagement letters, retainer letters, contracts, invoices[,] and any other financial documents detailing an agreement or payment for legal services by an outside individual attorney or law firm for departments under the governor's jurisdiction . . . for calendar years 2019, 2020[,] and 2021." (Reproduced R. "R.R." at 1a.) In response, OGC produced 169 pages of invoices from outside law firms and their subcontractors with extensive redactions (R.R. at 26a-195a), including the subject matter line of each invoice—i.e., the information "typically located near the top of each individual invoice and preceded with 'RE:' or 'In the Matter of' or 'Project:.'" (R.R. at 7a.) OGC at that time asserted that the redactions—generally, not only of the subject matter lines, but of other contents as well—concealed information protected by the attorney-client privilege, work product privilege, or executive privilege.

Requesters appealed to OOR, specifically limiting their challenge to OGC's redaction of the invoices' subject matter lines, seeking "review of the redactions which improperly obscure the purpose or name of the case." (R.R. at 8a.) Requesters requested that the redacted subject matter lines be revealed or, in the alternative, that *in camera* review of the records be done by OOR. Requesters specifically disclaimed that they sought review of redactions issued to protect

---

[2] Requesters Couloumbis and Janesch are journalists employed by, respectively, Spotlight PA and The Caucus. Couloumbis and Janesch were also the requesters in two recent RTKL appeals before this Court involving access to the legal billing records of the Pennsylvania Senate and House of Representatives. *See Couloumbis v. Senate of Pa.*, 300 A.3d 1093 (Pa. Cmwlth. 2023), and *Janesch v. Pa. House of Representatives*, 299 A.3d 1030 (Pa. Cmwlth. 2023). Although those matters were decided after submission of briefs in the instant case, they deal with related issues.

personal information such as personal financial information, email addresses, telephone numbers, or similar personal identifying information.

After a failed attempt at mediation, OGC submitted an affirmation prepared by its open records officer, Marc Eisenstein, (R.R. at 18a-20a), asserting that the redactions were made pursuant to the attorney-client privilege, and that certain invoices—those generated by the law firms of Klehr Harrison Harvey Branzburg, LLP, and Obermayer, Rebmann, Maxwell & Hippel, LLP—were protected by the criminal investigation exception and were prohibited for release by order of court. (Eisenstein Affirmation, ¶¶ 16-17.) The Eisenstein affirmation mentions, in passing, that "counsel has not waived the attorney work[ ]product privilege" but does not elaborate further. (*Id.,* ¶ 15.) The Eisenstein affirmation does *not* assert executive privilege, which was claimed in OGC's denial letter. Requesters concede, for purposes of this appeal, that the Eisenstein affirmation functions as a testimonial affidavit. (Requesters' Br. at 18 n.5.) Notably, despite the express limitation of the appeal to the subject matter line redactions, the Eisenstein affirmation does not specifically address those, but instead refers to the entirety of the redactions.

On November 21, 2022, OOR issued its final determination affirming OGC's partial denial of the request, concluding that the Eisenstein affirmation established that the subject matter lines were subject to attorney-client privilege. [Final Determination (Pa. Off. of Open Recs., Docket No. AP 2022-0621, issued Nov. 21, 2022).] OOR denied Requesters' request for *in camera* review and did not acknowledge or address OGC's additional justifications for the redactions. Although noting that "the subject matters of invoices are not generally withheld by agencies" and recognizing that its determination means that the public is "unable to

3

fully understand why taxpayer legal expenses have been incurred for these invoices," OOR nevertheless found that OGC had "demonstrated that the specific information, in this instance, is protected by the attorney-client privilege." (*Id.*) OOR concluded that because a sworn affidavit may serve as sufficient evidentiary support for denial and, given the presumption that averments in an affidavit are true in the absence of bad faith, OGC had met its burden to show that the information was protected by the attorney-client privilege.

Requesters asked OOR for reconsideration, which request was denied as untimely. Thereafter, Requesters filed the instant petition for review. On appeal, Requesters argue that OGC did not meet its burden to establish that the redacted subject matter lines are privileged or otherwise exempt from the RTKL, addressing the attorney-client and work product privileges and the criminal investigation exemption in their brief. OGC continues to argue that the attorney-client privilege applies to prevent the release of the redacted portions of the records sought; OGC also continues to assert that the redacted portions of the Klehr Harrison and Obermayer invoices "include details that would reveal the institution, progress, or result of investigations."[3] (OGC Br. at 12.)

---

[3] We note that the issue of work product privilege is waived. Beyond a brief mention of the work product privilege, the Eisenstein affirmation provides no justification for its application, as an agency must raise all its challenges before the fact-finder closes the record. *Levy v. Senate of Pa.*, 94 A.3d 436, 441 (Pa. Cmwlth. 2014) (*Levy 2014*).

Furthermore, despite asserting that the work product privilege applies in an argument heading of its brief (OGC Br. at 5), the issue is not argued in the body of the brief. The argument portion of a brief must be developed with pertinent discussion of the issues, including citations to relevant authority. Rule 2119(a) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 2119(a). When parties fail to satisfy this requirement, the Court is neither obliged, nor even particularly equipped, to develop an argument for them. *Skytop Meadow Cmty. Ass'n, Inc. v. Paige*, 177 A.3d 377, 385 (Pa. Cmwlth. 2017).

### *Klehr Harrison and Obermayer Invoices*

At OGC's insistence, we ordered submission of the Klehr Harrison and Obermayer invoices and conducted an *in camera* review. Although continuing to assert that these invoices are covered by the attorney-client privilege, the specific reason for requesting *in camera* review of these invoices were, variously, the "ramifications inherent in disclosing records of investigations" (OGC Br. at 13), and the suggestion at oral argument that the Klehr Harrison and Obermayer invoices were protected by an order of court and thus may only be reviewed by a court.

We have reviewed the Klehr Harrison and Obermayer invoices in full and find no ground to preclude the release of these records with the subject matter lines unredacted.

### *RTKL Burden Generally*

Where an agency asserts a privilege, it bears the burden of proof to demonstrate by sufficient facts that the privilege applies. *Janesch v. Pa. House of Representatives*, 299 A.3d, 1030, 1036 (Pa. Cmwlth. 2023); *see also* Section 708(a)(1) of the RTKL, 65 P.S. § 67.708(a)(1) ("[t]he burden of proving that a record of a Commonwealth agency . . . is exempt from public access shall be on the . . . agency . . . by a preponderance of the evidence"); Section 903(2) of the RTKL, 65 P.S. § 67.903(2) (when denying a request in whole or in part, an agency must state in writing the "specific reasons for the denial including citation of supporting legal authority").

### *Criminal Investigation Exception*

OGC broadly argues that its redactions from the Klehr Harrison and Obermayer invoices would reveal the institution, progress, or result of criminal investigations and are prohibited by order of court.[4]

Paragraphs 16 and 17 of the Eisenstein affirmation state as follows:

> 16) In addition to the above privileges and averments, which apply with equal credulity [sic] to the invoices detailing the work of Klehr Harrison and Obermayer[], such invoices of those two firms specifically detail work performed on criminal investigations and detail the initiation, progress[,] or result of such investigations.
>
> 17) With respect to the invoices of Klehr Harrison and Obermayer . . . , an order of court prohibits the Office for [sic] disclosing further information about such matters.

(R.R. at 20a.) OGC thus implicitly invoked Section 67.708(b)(16)(iv) and (vi)(A) of the RTKL (criminal investigation exception), which exempts from access:

---

[4] This portion of the brief leaves something to be desired in terms of compliance with Pennsylvania Rule of Appellate Procedure 2119(a), *see supra* note 3; it consists of approximately one page of text with two footnotes and no citation to legal authority. At all events, as we have reviewed the actual unredacted documents, we exercise our discretion and address this issue insofar as it is cognizable.

OGC also incorrectly states that OOR affirmed its determination on this ground. OOR's final determination did not address this issue.

We further note that OGC relies in its brief on the Eisenstein affirmation as evidence that the redactions are justified under the criminal investigation exception and/or subject to an order of court. Given the brief and entirely conclusory nature of the representations concerning the criminal investigation exception, the Eisenstein affirmation is insufficient to prove that the subject matter lines in the Klehr Harrison and Obermayer invoices are exempt from disclosure. *See Off. of the Governor v. Scolforo*, 65 A.3d 1095, 1103 (Pa. Cmwlth. 2013) (*en banc*) (to meet the burden of proof that a record is exempt, a testimonial affidavit must be "detailed [and] nonconclusory").

A record of an agency relating to or resulting in a criminal investigation, including:

. . . .

(iv) A record that includes information made confidential by . . . court order.

. . . .

(vi) A record that, if disclosed, would do any of the following:

. . . .

(A) Reveal the institution, progress or result of a criminal investigation, except the filing of criminal charges.

65 P.S. § 67.708(b)(16)(iv) and (vi)(A).

Our review of the unredacted documents in question reveals that the subject matter lines in the Klehr Harrison invoices each state "[Individual] GJ Representation." The subject matter lines in the Obermayer invoices state as follows: "[INDIVIDUAL] AS WITNESS IN A STATE GRAND JURY INVESTIGATION," "WITNESSES IN A FEDERAL INVESTIGATION IN THE MIDDLE DISTRICT OF PA," "[INDIVIDUAL] IN AN INVESTIGATION BY THE STATE ETHICS COMMISSION." We conclude that these do not reveal the "institution, progress[,] or result of a criminal investigation."

As our Supreme Court has stated, the term "'criminal investigation' clearly and obviously refers to an *official inquiry* into a possible crime.'" *Pa. State Police v. Grove*, 161 A.3d 877, 892-93 (Pa. 2017) (emphasis supplied). We find as fact that OGC was not itself pursuing an official inquiry into a possible crime but representing individuals as witnesses or in some capacity before grand juries conducted by federal or state authorities and in an investigation by the State Ethics

7

Commission. *See Bowling v. Off. of Open Recs.*, 75 A.3d 453, 474 (Pa. 2013) (holding that under RTKL, reviewing courts are ultimate finders of fact and are to conduct full *de novo* reviews of appeals made from RTKL appeals officers). Moreover, it is doubtful that OGC, as its powers and duties are delineated by Section 301 the Commonwealth Attorneys Act,[5] 71 P.S. § 732-301, may in the first instance engage in an "official inquiry" into a possible crime,[6] and surely not one before a federal or state grand jury or the State Ethics Commission.

In *Levy 2014*,[7] a case in which a requester sought legal bills from the Pennsylvania Senate, we rejected the Senate's argument that the criminal investigation exception protects client identities and general descriptions of legal services in legal bills because the information related to or resulted in a criminal investigation. In that case, we held that "neither the client identities nor the general descriptions of services performed reveal the institution or progress of a criminal investigation. The records at issue are bills or an engagement letter and do not relate to any 'law enforcement functions' of the Senate." *Id.* at 449; *cf. Galloway v. Off. of Pa. Att'y Gen.*, 63 A.3d 485, 487 (Pa. Cmwlth. 2013) (records protected from disclosure under criminal investigation exception because the request pertained to the law enforcement functions of the Office of Attorney General).

---

[5] Act of October 15, 1980, P.L. 950, *as amended*.

[6] It is the Office of Attorney General, an independent department, *see* Section 201 of the Commonwealth Attorneys Act, 71 P.S. § 732-201, that has power to investigate "*any* criminal offense which he has the power to prosecute . . ." and "convene and conduct investigating grand juries." Section 206 of the Commonwealth Attorneys Act, 71 P.S. § 732-206 (emphasis supplied).

[7] The *Levy* series of cases, *Levy v. Senate of Pennsylvania*, 34 A.3d 243 (Pa. Cmwlth. 2011), *rev'd in part*, 65 A.3d 361 (Pa. 2013) (*Levy 2013*), and *Levy 2014* (on remand from the Supreme Court's decision in *Levy 2013*), set forth standards for, *inter alia*, the criminal investigation exception and the attorney-client privilege.

As was the case with the documents at issue in *Levy 2014*, the Klehr Harrison and Obermayer invoices' subject matter lines do not relate to any "official inquiry" of OGC of the type contemplated by the criminal investigation exemption. OGC has no law enforcement function in these matters but is instead providing—through outside law firms—representation to individuals in investigations being conducted by other entities. Thus, the Klehr Harrison and Obermayer invoices' subject matter lines are not exempt from disclosure under Section 708(b)(16)(vi)(A) of the RTKL.

No court order (or orders, given the multiple inquiries referenced in the subject matter lines) has (or have) been provided, identified, or described, either in the records themselves or any submission to OOR or this Court to support the claim that the Klehr Harrison or Obermayer invoices' subject matter lines may not be released by order of court. Given this, OGC has failed to meet its burden to show that disclosure of the subject matter lines in the Klehr Harrison and Obermayer invoices are prevented by Section 708(b)(16)(iv) of the RTKL. To the extent that OAG is simply referring to the rules regarding the secrecy of grand jury proceedings, *Levy 2014* likewise rejected that argument regarding client identities. We concluded that "revealing the name of the client in the Senate's billing records does not constitute the 'unauthorized disclosure of a matter occurring before a [state or federal] grand jury.'" *Levy 2014*, 94 A.3d at 447.

## *Attorney-Client Privilege*

Similarly, with respect to the subject matter lines on the Klehr Harrison and Obermayer invoices, we find that the attorney-client privilege does not prevent disclosure.[8]

A Commonwealth agency record is generally presumed to be public unless "protected by a privilege" or subject to other exemption, Section 305(a) of the RTKL, 65 P.S. § 67.305(a); *see also* 65 P.S. § 67.102 [defining "public record" as "a record . . . not protected by privilege"]. The RTKL defines privilege to include "the attorney-client privilege." 65 P.S. § 67.102. In criminal proceedings or civil matters, "counsel shall not be competent to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." Sections 5916 and 5928 of the Judicial Code, 42 Pa.C.S. §§ 5916 and 5928. Whether the attorney-client privilege protects a communication from disclosure is a question of law. *In re Thirty-Third Statewide Investigating Grand Jury*, 86 A.3d 204, 215 (Pa. 2014).

The contours of the attorney-client privilege as it applies in the context of the RTKL were set forth by the Supreme Court in *Levy v. Senate of Pennsylvania*, 65 A.3d 361 (Pa. 2013) (*Levy 2013*). While attorney-client privilege is deeply rooted in the common law, it is in tension with the RTKL's goal of government transparency. *Id.* at 368. Not all information passed between client and attorney is

---

[8] As it did before OOR, OGC continues to generally contend that the attorney-client privilege protects all the redacted information in the invoices from disclosure, without addressing the specific redactions—the subject matter lines—that Requesters appealed to the OOR and this Court. OGC also continues to rely on the Eisenstein affirmation to meet its burden of showing that the attorney-client privilege applies.

privileged, but rather the privilege is limited to communications related to the legal advice sought by the client. *Id. at* 368-69. Further,

> the determination of the applicability of the attorney-client privilege does not turn on the category of the information, such as a client's identity or address, or the category of a document, such as whether it is an invoice or fee agreement. Instead, the relevant question is whether the content of the writing will result in disclosure of information otherwise protected by the attorney-client privilege. For example, descriptions of legal services that address the client's motive for seeking counsel, legal advice, strategy, or other confidential communications are undeniably protected under the attorney[-]client privilege. In contrast, an entry that generically states that counsel made a telephone call for a specific amount of time to the client is not information protected by the attorney-client privilege but, instead, is subject to disclosure under the specific provisions of the RTKL.

*Id.* at 373 (internal citation omitted). "While a client's identity is generally not privileged, the attorney-client privilege may apply in cases where divulging the client's identity would disclose either the legal advice given or the confidential communications provided." *Id.* at 371-72. "Application of the exception . . . will involve case[-]specific determinations of whether revealing the otherwise non-privileged identity will result in the disclosure of privileged information based upon what has been previously disclosed." *Id.* at 372.

The Klehr Harrison and Obermayer invoices' subject matter lines contain the information set forth above: the fact that individuals, some identified and some not, were represented as witnesses before state and federal grand juries and in an investigation by the State Ethics Commission. The fact of (named or unnamed) individuals' representation in a grand jury or State Ethics Commission proceeding does not reveal what the *Levy* decisions stated is protected by the attorney-client

11

privilege: "[s]pecific descriptions of legal services *that would divulge confidential client communications or an attorney's mental impressions, legal theories or analysis, notes, strategies, and the like*." *Couloumbis v. Senate of Pa.*, 300 A.3d 1093, 1103-04 (Pa. Cmwlth. 2023) (*Couloumbis 2023*)[9] (emphasis supplied) (citing the *Levy* decisions). As the Supreme Court held regarding a similar claim of privilege in *Levy 2013*, "given the substantial redactions of confidential communications in the body of the document, . . . there was no need to redact the client's name. Nothing was revealed other than the fact of counsel's engagement and that it related to a grand jury investigation." *Levy 2013*, 65 A.3d at 372. Based on our careful review of the documents, we find that the subject matter lines, if released, would not divulge any protected information.

In light of the foregoing, we conclude that the Klehr Harrison and Obermayer invoice subject matter lines are not subject to attorney-client privilege or the criminal investigation exception and are subject to disclosure under the RTKL.

### *Application of Attorney-Client Privilege to the Balance of the Invoices*

What remains to be decided is the applicability of the attorney-client privilege to the subject matter lines in the balance of the invoices, found on pages 26a to 61a, 95a to 100a, and 190a to 194a of the Reproduced Record. We have determined that remand to OOR for *in camera* review of these invoices is appropriate to develop a factual record.

Requesters argue that OGC failed to establish that the subject matter lines were subject to attorney-client privilege. They contend that it is implausible that the caption of every invoice OGC received from an outside law firm between 2019 and 2021 contains information subject to the attorney-client privilege.

---

[9] *See supra* note 2.

12

Requesters do not argue that the captions of legal invoices can never be privileged, only that it is "exceedingly rare," (Requesters' Br. at 18), and that the contention that all the involved captions contained such information beggars belief, given that information typically contained in the captions of legal invoices does not reveal information protected by the attorney-client privilege. Requesters further argue that the Eisenstein affirmation contains only vague, conclusory statements about the application of the attorney-client and work product privileges to the invoice captions and fails to carry OGC's burden.

OGC asserts that it has met its burden to show that the attorney-client privilege applies to the redactions made through the Eisenstein affirmation. Neither the affirmation nor OGC's brief address the information contained specifically in the subject matter lines, except to briefly state that it does not matter that the information is in the caption rather than the body of the invoice. (OGC Brief at 11-12.)

In recent cases, *Janesch* and *Couloumbis 2023*, we considered similar requests for subject matter lines in legal invoices held by legislative agencies—the two houses of the Pennsylvania General Assembly. We stated that pursuant to the *Levy* line of cases,

> general descriptions of legal services, *i.e.*, that a lawyer made a telephone call, had a meeting, or sat in conference with other lawyers or the client, are not protected and may not be redacted from attorney invoices or engagement letters. Specific descriptions of legal services that would divulge confidential client communications or an attorney's mental impressions, legal theories or analysis, notes, strategies, and the like are protected. These are the only general categories of privileged information of which the *Levy* decisions speak. Their application and the propriety of any redactions made by an agency to a RTKL document production on the grounds of privilege must be

13

> addressed on a case-by-case basis. Thus, whether subject matters in engagement letters and invoices may be redacted depends on whether their disclosure would compromise the protection of the confidential information identified above. If not, then the [attorney-client] privilege[] do[es] not apply and the subject matters must be disclosed.

*Couloumbis 2023*, 300 A.3d at 1103-04 (citations omitted); *see also Janesch*, 299 A.3d at 1040-41. We declined to accept the suggestion of the Senate in *Couloumbis 2023* that there was any categorical protection of production of subject matter lines in legal representations contained in engagement letters and invoices. *Couloumbis 2023*, 300 A.3d at 1104. Conversely, there was not, as suggested by Requesters in *Janesch*, a "prophylactic rule . . . requiring the production of the subject matters of legal representation, whether contained in the subject line of an engagement letter, the body of an invoice, or elsewhere." *Janesch*, 299 A.3d at 1041. "Rather, each subject matter is to be analyzed independently to determine whether its disclosure would compromise confidential information." *Couloumbis 2023*, 300 A.3d at 1104. The application and propriety of any redactions made on the grounds of privilege "must be addressed on a case-by-case basis." *Janesch*, 299 A.3d at 1041.

One method an agency may use in meeting the burden of proof that a record is exempt from disclosure is through relevant and credible testimonial affidavits or attestations. *Couloumbis 2023*, 300 A.3d at 1104. Such documents may provide sufficient evidence in support of a claimed exemption. *Off. of the Dist. Att'y of Phila. v. Bagwell*, 155 A.3d 1119, 1130 (Pa. Cmwlth. 2017). However, conclusory affidavits, standing alone, will not satisfy the burden of proof an agency must sustain to show that a requester may be denied access to records under the RTKL. *Id.*

14

In *Couloumbis 2023*, the Senate provided three attestations relevant to its redactions and asserted privileges. One asserted that the Senate "was careful not to make any blanket redactions" but two others stated that the subject matter was redacted in most circumstances "where the representation is not otherwise a matter of public record in a court of law." *Couloumbis 2023*, 300 A.3d at 1104-05. We found that these statements were contradictory and that the blanket application was inconsistent with the *Levy* decisions' rule that redactions from legal documents be made on a case-by-case basis, and that we did not have enough information to determine whether the Senate had met its burden to establish applicability of the privileges it asserted. *Id.* at 1105. We remanded the matter for *in camera* review of the documents at issue, concluding that "without more information, we [could not] determine if the Senate has met its burden to establish the applicability of either the attorney-client or work product privileges." *Id.*

However, we found that the affidavits submitted by the House in *Janesch* were sufficient, because

> [a]ll . . . of the . . . affiants included specific factual material detailing their search for responsive documents, their knowledge of the *Levy* decisions, their (days-long) personal review of responsive documents, and the specific categories of items they redacted . . . . [N]o document was withheld in its entirety on the basis of privilege. The documents all have been produced and contain more than sufficient unredacted information to give ample context clues identifying the nature of the redacted information and the ground(s) upon which the redactions were made. Thus, we conclude that the [a]ffidavits, coupled with the responsive documents themselves, adequately establish the applicability of the attorney-client and work product privileges to the House's redactions.

*Janesch*, 299 A.3d at 1042.

15

In this case, the Eisenstein affirmation states that all redactions were made pursuant to the parameters set forth in *Levy 2013*. (Eisenstein Affirmation ¶ 6). The affirmation continues with statements to the effect that "unless otherwise detailed," all redactions were "necessary to prevent disclosure of the client's motive for seeking counsel, legal advice, strategy, or other confidential information" (*id.*, ¶ 7); that the redactions "detailed the legal advice, and/or strategy relating to a wide variety of matters for which the client consulted an attorney, would reveal the client's reasons or motivation for seeking legal advice" (*id.*, ¶ 8); and that OGC did not redact "every line" but went "word by word," redacting "portions of entries, while leaving intact for each line the type of work being conducted, such as a telephone call, email, or meeting" (*id.*, ¶ 9). The affirmation asserts that "[t]o provide further justification for each redaction would require [OGC] to provide information that is itself subject to the attorney privilege and its disclosure/production would violate said privilege." (*Id.*, ¶ 10.) OGC insists that the redacted information "only details the specific work being performed and the nature of the legal issue being addressed *only* where such work is not a matter already disclosed to the public, such as in cases brought before the Courts of the United States or this Commonwealth" [*Id.*, ¶ 11 (emphasis original)]; and "reveals the attorney's legal strategies on varied issues. For example, the redactions remove reference to the specific cases and laws that counsel researched to address issues[] but left intact the fact that research or similar work was performed" (*id.*, ¶ 12); and "includes details of the legal issue for which [OGC] sought legal services." (*Id.*, ¶ 13.) The affiant denied that OGC had redacted the names of individuals with whom it communicated "except where doing so would reveal privileged information." (*Id.*, ¶ 14.)

16

The Eisenstein affirmation treats the subject matter lines and all other redactions the same. The affirmation states that all redactions were made pursuant to the parameters set forth in *Levy 2013* but fails to explain why the specific redactions challenged before OOR—the invoice subject matter lines—are covered by the attorney-client or work product privileges, or to mention them as distinguished from the other redacted items. This is problematic given the reduced scope of records sought by Requesters on appeal to OOR. Further, given the discrepancy between what we found in our *in camera* review of the Klehr Harrison and Obermayer invoices and what was represented in the Eisenstein affirmation, we believe *in camera* review necessary to confirm the applicability of the attorney-client privilege to the balance of the invoices' subject matter lines.

### *Conclusion*

In light of the foregoing, we reverse the order of the OOR with respect to the Klehr Harrison and Obermayer invoice subject matter lines and direct OGC to release copies of those records with those items unredacted. With respect to the remainder of the invoices, we vacate and remand the matter to OOR for *in camera* review of the balance of the invoices with the subject matter lines unredacted, with a final determination to be issued within 120 days of the date of the Court's Order.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Angela Couloumbis, Spotlight PA,     :
Sam Janesch and The Caucus,     :
             Petitioners     :
    :
       v.     :    No. 1425 C.D. 2022
    :
Pennsylvania Office of General     :
Counsel (Office of Open Records),     :
             Respondent     :

# **O R D E R**

AND NOW, this 23rd day of July, 2024, after argument on September 11, 2023, and *in camera* judicial review by the panel, it is ORDERED and DECREED as follows:

The final determination of the appeals officer of the Office of Open Records is REVERSED IN PART.  The final determination is REVERSED as to the denial of Petitioners' appeal as it respects to redacted subject matter lines on the invoices of Klehr Harrison Harvey Branzburg, LLP, and Obermayer, Rebmann, Maxwell & Hippel, LLP, which this panel inspected *in camera* and are found in redacted form in the Reproduced Record from pages 26a to 61a, 95a to 100a, and 190a to 194a.  The Pennsylvania Office of General Counsel is DIRECTED to release these records with the subject matter lines unredacted, with the balance of the redactions unaffected.

It is DIRECTED that the unredacted bills of Klehr Harrison Harvey Branzburg, LLP, and Obermayer, Rebmann, Maxwell & Hippel, LLP, shall remain with this Court under seal and shall not be remitted with the record on remand.

The final determination is VACATED IN PART and the matter is REMANDED to the Office of Open Records to hold an *in camera* review to determine whether only the subject matter lines contained in the remaining invoices found in the Reproduced Record from pages 62a to 94a and 101a to 189a are exempt from disclosure under the attorney-client privilege. The Office of Open Records is DIRECTED to issue a final determination in this matter within 120 days of the date of this Order.

Jurisdiction is relinquished.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita