# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

League of Women Voters of Pennsylvania, :
Carmen Febo San Miguel, James Solomon, :
John Greiner, John Capowski, Gretchen :
Brandt, Thomas Rentschler, Mary Elizabeth :
Lawn, Lisa Isaacs, Don Lancaster, Jordi :
Comas, Robert Smith, William Marx, :
Richard Mantell, Priscilla McNulty, :
Thomas Ulrich, Robert McKinstry, :
Mark Lichty, Lorraine Petrosky, :
                        Petitioners :
                         :
          v. : No. 261 M.D. 2017
                         :
The Commonwealth of Pennsylvania; :
The Pennsylvania General Assembly; :
Thomas W. Wolf, In His Capacity :
As Governor of Pennsylvania; :
Michael J. Stack III, In His Capacity As :
Lieutenant Governor of Pennsylvania And :
President of the Pennsylvania Senate; :
Michael C. Turzai, In His Capacity As :
Speaker of the Pennsylvania House of :
Representatives; Joseph B. Scarnati III, :
In His Capacity As Pennsylvania Senate :
President Pro Tempore; Robert Torres, :
In His Capacity As Acting Secretary of :
the Commonwealth of Pennsylvania; :
Jonathan M. Marks, In His Capacity :
As Commissioner of the Bureau of :
Commissions, Elections, and Legislation :
of the Pennsylvania Department of State, :
                        Respondents :

# ORDER

NOW, this 8th day of February, 2018, upon consideration of the

Motion of the General Assembly of the Commonwealth of Pennsylvania to Report

Unreported Opinion and petitioners' answer thereto, said motion is granted.  It is hereby ordered that the Memorandum and Order filed November 22, 2017 shall be designated OPINION rather than MEMORANDUM AND ORDER, and it shall be reported.


_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

League of Women Voters of Pennsylvania, :
Carmen Febo San Miguel, James Solomon, :
John Greiner, John Capowski, Gretchen :
Brandt, Thomas Rentschler, Mary Elizabeth :
Lawn, Lisa Isaacs, Don Lancaster, Jordi :
Comas, Robert Smith, William Marx, :
Richard Mantell, Priscilla McNulty, :
Thomas Ulrich, Robert McKinstry, :
Mark Lichty, Lorraine Petrosky, :
                  Petitioners :
                  :
          v. : No. 261 M.D. 2017
                  :
The Commonwealth of Pennsylvania; :
The Pennsylvania General Assembly; :
Thomas W. Wolf, In His Capacity :
As Governor of Pennsylvania; :
Michael J. Stack III, In His Capacity As :
Lieutenant Governor of Pennsylvania And :
President of the Pennsylvania Senate; :
Michael C. Turzai, In His Capacity As :
Speaker of the Pennsylvania House of :
Representatives; Joseph B. Scarnati III, :
In His Capacity As Pennsylvania Senate :
President Pro Tempore; Robert Torres, :
In His Capacity As Acting Secretary of :
the Commonwealth of Pennsylvania; :
Jonathan M. Marks, In His Capacity :
As Commissioner of the Bureau of :
Commissions, Elections, and Legislation :
of the Pennsylvania Department of State, :
                  Respondents :

**BEFORE: HONORABLE P. KEVIN BROBSON, Judge**

**OPINION BY JUDGE BROBSON**        **FILED: November 22, 2017**

Presently before the Court for disposition are various discovery matters, which raise, *inter alia*, the applicability of Article 2, Section 15 of the Pennsylvania Constitution, also known as the Speech and Debate Clause. Respondents the Pennsylvania General Assembly, Speaker of Pennsylvania House of Representatives Michael C. Turzai, and President Pro Tempore of the Pennsylvania Senate Joseph B. Scarnati III (Legislative Respondents) contend that much, if not all, of the discovery that Petitioners seek in this matter is barred by the immunity afforded under the Speech and Debate Clause, which Legislative Respondents maintain is *absolute*. Petitioners, by contrast, contend that federal courts hearing gerrymandering challenges throughout the country have recognized only a *qualified* legislative privilege, allowing discovery of the type that Petitioners seek here. *See, e.g.*, *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323 (E.D. Va. 2015). Petitioners also directed the Court to the Florida Supreme Court decision in *League of Women Voters of Florida v. Florida House of Representatives*, 132 So. 3d 135 (Fla. 2013) (*LWV of Fl.*), which also recognized only a qualified legislative privilege in the context of a gerrymandering challenge.

Pennsylvania's Speech and Debate Clause provides, in relevant part: "The members of the General Assembly . . . for any speech or debate in either House . . . shall not be questioned in any other place." Pa. Const., Art. 2, § 15. The Pennsylvania Supreme Court has held that the scope of Pennsylvania's Speech and Debate Clause is indistinguishable from its counterpart in the United States Constitution. *Consumers Educ. and Prot. Ass'n v. Nolan*, 368 A.2d 675, 681 (Pa. 1977). Following United States Supreme Court precedent, the Pennsylvania Supreme Court held that the Speech and Debate Clause must be construed "broadly in order to protect legislators from *judicial interference* with their legitimate

legislative activities." *Id.* at 680-81 (emphasis added). Our Supreme Court has further explained the breadth of the protection as follows:

> [T]he immunity of the legislators must be absolute as to their actions within the "legitimate legislative sphere." To accomplish this we must not only insulate the legislator against the results of litigation brought against him for acts in the discharge of the responsibilities of his office, but also relieve him of the responsibility of defending against such claims.

*Consumer Party of Pa. v. Cmwlth.*, 507 A.2d 323, 331 (Pa. 1986), *abrogated on other grounds by Pennsylvanians Against Gambling Expansion Fund, Inc. v. Cmwlth.*, 877 A.2d 383 (Pa. 2005). "It is undisputed that legislative immunity [under the Speech and Debate Clause] precludes inquiry into the motives or purposes of a legislative act." *Government of the Virgin Islands v. Lee*, 775 F.2d 514, 522 (3d Cir. 1985).

Not all activities of state legislators, however, are protected. To be protected, the activity in question must fall within "the sphere of legitimate legislative activity." *Id.*; *see Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Firetree Ltd. v. Fairchild*, 920 A.2d 913, 920 (Pa. Cmwlth. 2007), *appeal denied*, 946 A.2d 689 (Pa. 2008); *but see United States v. Brewster*, 408 U.S. 501, 512 (1972) (noting that legislators often engage in activities—*e.g.*, constituent service and newsletters—that are not purely legislative and thus not protected by Speech and Debate Clause of United States Constitution). The protections of the Speech and Debate Clause are not, however, confined to the walls of the Pennsylvania House or Pennsylvania Senate Chambers. They also extend to "fact-finding, information gathering, and investigative activities," which "are essential prerequisites to the drafting of bills and the enlightened debate over proposed legislation." *Government of the Virgin Islands*, 775 F.2d at 521. It is also now well-settled that the protections

3

of the Speech and Debate Clause extend to legislative staff. *See Gravel*, 408 U.S. at 616-22.

Underlying the speech and debate privilege is the preservation of the structure in our state constitution of separate but equal branches of government: "Two interrelated rationales underlie the Speech or Debate Clause: first, the need to avoid intrusion by the Executive *or Judiciary* into the affairs of a coequal branch, and second, the desire to protect legislative independence." *United States v. Gillock*, 445 U.S. 360, 369 (1980) (emphasis added). "In our system, 'the clause serves the additional function of reinforcing the separation of powers so deliberately established by the Founders.'" *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975) (quoting *United States v. Johnson*, 383 U.S. 169 (1966)). As a coequal branch with the Pennsylvania General Assembly, Pennsylvania state courts are so constrained. Federal courts, however, are not. Federal courts are not compelled to honor state constitutional protections afforded to state legislatures. This explains why the federal gerrymandering cases on which Petitioners rely are neither dispositive nor persuasive. The opinions in those cases invariably address only whether state legislators are entitled to "state legislative immunity," a *qualified* privilege sourced not in constitutional law, but in federal common law.

In *Bethune-Hill*, an opinion Petitioners rely upon, the plaintiffs initiated a federal lawsuit, challenging certain state house districts as unlawful racial gerrymanders in violation of the Equal Protection Clause of the United States Constitution. The plaintiffs served discovery on the Virginia House of Delegates (Va. House), seeking both internal and external communications relating to the redistricting process. The Va. House asserted "legislative privilege" to shield the production of certain documents. In addressing the claim of privilege, the District

4

Court distinguished legislative immunity and privilege for *federal* legislators, which is derived from the Speech and Debate Clause of the United States Constitution, from state legislative immunity recognized by federal courts:

> [F]ederal legislators are entitled to *an absolute* legislative immunity grounded in the Constitution for any civil or criminal action based in substance or evidence upon acts performed within the "sphere of legitimate legislative activity." This immunity is further safeguarded by an absolute legislative privilege preventing compelled testimony or documentary disclosure regarding legislative activities in support of such claims.
>
> . . .
>
> State legislative immunity differs, however, from federal legislative immunity in its source of authority, purpose, and degree of protection. Unlike federal legislative immunity, which is grounded in constitutional law, *state legislative immunity in federal court* is governed by federal common law. Moreover, the principles animating immunity for state legislators under common law—while significant—are distinguishable from these principles underlying the constitutional immunity afforded federal legislators.

*Bethune-Hill*, 114 F. Supp. 3d at 332-33 (citation omitted) (emphasis added). The District Court specifically noted that the "separation of powers" concerns implicated where a federal court interferes in the affairs of Congress are of greater weight and importance than any concern about federal interference in a state legislative process. *Id.* at 333. Moreover, the District Court cited to the Supremacy Clause of the United States Constitution as empowering the federal courts to enforce federal law over any competing state protections. *Id.* Under federal common law, state legislative privilege and state legislative immunity is "qualified based on the nature of the claim at issue." *Id.* at 334.

5

Legislative Respondents clearly are not invoking qualified legislative privilege and immunity under federal common law; rather, they are invoking absolute legislative privilege and immunity based on the Speech and Debate Clause of the Pennsylvania Constitution. This Court is as duty bound to honor this constitutional provision in a lawsuit involving the actions of state legislators as is a federal court bound to honor the identical absolute legislative privilege and immunity sourced in the United States Constitution in a lawsuit involving the actions of federal legislators.[1]

Relying, then, on relevant state and federal precedent in this area, the Court concludes that Legislative Respondents in this case enjoy absolute legislative immunity under Article 2, Section 15 of the Pennsylvania Constitution. This immunity extends to activities within the "sphere of legitimate legislative activity." In their Petition for Review, Petitioners challenge the constitutionality of the 2011 reapportionment of Pennsylvania's congressional seats and the resulting congressional district maps. It is undisputed that Pennsylvania drew the 2011 congressional map through a legislative process, which resulted in the Congressional Redistricting Act of 2011, Act of December 22, 2011, P.L. 599, 25 P.S. §§ 3596.101-.1510 (Act 131 of 2011). Accordingly, the consideration and

---

[1] Petitioners' reliance on *LWV of Fl.* is similarly misplaced. Although that case, like this one, involved a state court challenge to a congressional redistricting plan and the assertion of a legislative privilege in response to discovery requests, different substantive law dictated the outcome in that case. Specifically, as the Florida Supreme Court noted in its opinion, the Florida Constitution does not include a speech and debate clause. *LWV of Fl.*, 132 So. 3d at 143. In the absence of an express legislative privilege, the Florida Supreme Court, recognizing separation of powers concerns, opted to adopt a common law qualified legislative privilege, similar to that recognized by federal courts. *See Bethune-Hill*. Additionally, the state supreme courts in Virginia and Rhode Island, states that have a speech and debate clause in their state constitutions, have held that the speech and debate clause precluded access to legislative materials regarding redistricting. *See Edwards v. Vesilind*, 790 S.E. 2d 469 (Va. 2016); *Holmes v. Farmer*, 475 A.2d 976 (R.I. 1984).

6

passage of Act 131 of 2011 was unquestionably a legitimate legislative activity. It is also beyond question that the activities of state legislators and their staff that fall within the sphere of this legitimate legislative activity are protected under the Speech and Debate Clause of the Pennsylvania Constitution. Accordingly, this Court lacks the authority to compel testimony or the production of documents relative to the intentions, motivations, and activities of state legislators and their staff with respect to the consideration and passage of Act 131 of 2011.

AND NOW, this 22nd day of November, 2017, with the foregoing legal principles in mind, the Court now considers the current discovery disputes relating to the 2011 Plan[2] as raised in (1) the objections of Legislative Respondents to Petitioners' notice of intent to serve subpoenas pursuant to Pa. R.C.P. No. 4009.21, filed with this Court on August 9, 2017, (2) Legislative Respondents' objections to Petitioners' notice of intent to serve a subpoena pursuant to Pa. R.C.P. No. 4009.21 on Thomas W. Corbett, former Governor of the Commonwealth of Pennsylvania (Governor Corbett), filed with this Court on August 28, 2017, (3) Petitioners' motion to strike objections to their notice of intent to serve subpoenas, filed with this Court on September 12, 2017, (4) Legislative Respondents' and the General Assembly's response to Petitioners' motion to strike objections to their notice of intent to serve subpoenas filed with this Court on September 26, 2017, and (5) assertions of privilege by Legislative Respondents with respect to Petitioners' first set of interrogatories and document requests, and makes the following rulings:

---

[2] For purposes of the subpoenas, Petitioners define the "2011 Plan" as

the 2011 Congressional Redistricting Plan for Pennsylvania that was signed into law in 2011 by the Governor of Pennsylvania, any preliminary or draft plans that preceded the 2011 Congressional Redistricting Plan, and any proposal, strategies or plans to redraw Pennsylvania's congressional districts following the 2010 Census.

7

1.  **Legislative Subpoenas:** Legislative Respondents object to the 11 subpoenas noticed by Petitioners and directed to the following individuals whom Legislative Respondents describe as current and/or former employees, legislative aides, consultants, experts, and agents of Legislative Respondents: Tony Aliano, Erik Arneson, Heather Cevasco, Krysjan Callahan, Drew Crompton, Glenn Grell, John Memmi, William Schaller, Dave Thomas, Gail Reinard, and David W. Woods (collectively referred to as the Legislative Subpoenas). The Legislative Subpoenas are hereby QUASHED, as the Court lacks the authority under the Speech and Debate Clause of the Pennsylvania Constitution to compel the production of the documents sought therein. In light of this ruling, the Court need not consider the other bases for objection raised by Legislative Respondents.

2.  **Third-Party Subpoenas:** Legislative Respondents object to the subpoenas noticed by Petitioners and directed to the Republican National Committee (RNC), the National Republican Congressional Committee (NRCC), the Republican State Leadership Committee (RSLC), and the State Government Leadership Foundation (SGLF) (collectively, Entities), and to Adam Kincaid and Thomas B. Hofeller (Individuals), whom Legislative Respondents believe are or have been associated with the RNC or the NRCC (collectively, the Third-Party Subpoenas).[3] The subpoenas directed to the Entities seek:

> 1. All documents referring or relating to the 2011 Plan, including, but not limited to:
>
>> a. All proposals, analyses, memoranda, notes, and calendar entries in whatever medium (*e.g.*, paper, computerized format, e-mail, photograph,

---

[3] In addition to objecting based on the Speech and Debate Clause, Legislative Respondents also raised objections on the bases of a privilege under the First Amendment, attorney-client privilege, attorney work product doctrine, the deliberative process privilege, and the executive privilege, and that the requests are overly broad and not relevant to Petitioners' claims.

audiotape) they are maintained referring or relating to the 2011 Plan.

b. All documents referring or relating to all considerations or criteria that were used to develop the 2011 Plan, such as compactness, contiguity, keeping political units or communities together, equal population, race or ethnicity, incumbent protection, a voter['s] or area's likelihood of supporting Republican or Democratic candidates, and any others.

c. All documents referring or relating to how each consideration or criterion was measured, including the specific data and specific formulas used in assessing compactness and partisanship.

d. All documents referring or relating to how each consideration or criterion affected the 2011 Plan, including any rule or principle guiding the use of each consideration or criteria in developing the 2011 Plan.

e. All communications since January 1, 2009, referring or relating to the 2011 Plan, including all communications to, from, or between the following organizations or individuals referring or relating to the 2011 Plan: [the RNC, the RSLC, REDMAP, the SGLF, Governor Corbett, former State Senators Pileggi and Brubaker, State Senators Scarnati, McIlhinney, Corman, Folmer, White, State Representatives Metcalfe, Grove, Cox, Dunbar, Evankovich, Gabler, Grell, Hahn, Kauffman, Knowles, Krieger, Mustio, Roae, Schlegel-Culver, Stern, any other member of the General Assembly, Thomas B. Hofeller, David W. Woods, Erik Arneson, John Memmi, William Schaller, Drew Crompton, Dave Thomas, Krysjan Callahan, Tony Aliano, Glenn Grell, Gail Reinard, Heather Cevasco, and the Republican Party of Pennsylvania.]

f. All communications with any consultants, advisors, attorneys, or political scientists referring or relating to the 2011 Plan.

g. All communications with any committees, legislators, or legislative staffers referring or relating to the 2011 Plan.

2. All documents referring or relating to the planning, purpose, execution, and results of Project REDMAP from its inception through the date of service of this subpoena.

3. All communications and reports to donors or contributors to the [RSLC] or the [SGLF] that refer, reflect, or discuss the purpose of or the strategy behind the REDMAP project or which report or evaluate the success or effectiveness of the REDMAP project in bringing about the reapportionment of congressional districts following the 2010 Census.

4. All PowerPoint slides from any training on redistricting presented to members of the Pennsylvania General Assembly (or their agents, employees, consultants, or representatives) or to Pennsylvania Governor Thomas Corbett.

The requests set forth in paragraph 1 of the subpoenas directed to the Individuals seek all documents referring or relating to the 2011 Plan, including, but not limited to:

a. All proposals, analyses, memoranda, notes, and calendar entries in whatever medium (*e.g.*, paper, computerized format, e-mail, photograph, audiotape) they are maintained referring or relating to the 2011 Plan.

b. All documents referring or relating to all considerations or criteria that were used to develop the 2011 Plan, such as compactness, contiguity, keeping political units or communities together, equal population, race or ethnicity, incumbent protection, a voter['s] or area's likelihood of supporting Republican or Democratic candidates, and any others.

c. All documents referring or relating to how each consideration or criterion was measured, including the specific data and specific formulas used in assessing compactness and partisanship.

d. All documents referring or relating to how each consideration or criterion affected the 2011 Plan,

10

including any rule or principle guiding the use of each consideration or criteria in developing the 2011 Plan.

e. All communications since January 1, 2009, with any affiliate of the Republican Party, including, but not limited to, the [RNC, the NRCC, the RSLC, REDMAP, or the SGLF that refer or relate to the 2011 Plan.

f. All communications with any consultants, advisors, attorneys, or political scientists referring or relating to the 2011 Plan.

g. All communications with any committees, legislators, or legislative staffers referring or relating to the 2011 Plan.

Paragraph 1(g) of each of the Third-Party Subpoenas is hereby STRICKEN based on the Speech and Debate Clause of the Pennsylvania Constitution.

Paragraph 1(e) of the subpoenas directed at the Entities is hereby STRICKEN based on the Speech and Debate Clause of the Pennsylvania Constitution to the extent that it seeks communications with former State Senators Pileggi and Brubaker; State Senators Scarnati, McIlhinney, Corman, Folmer, and White; State Representatives Metcalfe, Grove, Cox, Dunbar, Evankovich, Gabler, Grell, Hahn, Kauffman, Knowles, Krieger, Mustio, Roae, Schlegel-Culver, Stern, any other member of the General Assembly; David W. Woods, Erik Arneson, John Memmi, William Schaller, Drew Crompton, Dave Thomas, Krysjan Callahan, Tony Aliano, Glenn Grell, Gail Reinard, and Heather Cevasco.

As to the remaining categories of documents sought in the Third-Party Subpoenas, it is not clear from the wording that any and all responsive documents from the Entities and Individuals would fall within the scope of the indemnity and privilege protected by the Speech and Debate Clause of the Pennsylvania Constitution. Accordingly, the Court will not strike the Third-Party Subpoenas outright. Nonetheless, recognizing the Court's inability to compel production of

11

testimony or documents with respect to matters protected by the Speech and Debate Clause of the Pennsylvania Constitution, the remaining categories of documents sought in the Third-Party Subpoenas SHALL BE INTERPETED as *excluding* those documents that reflect the intentions, motivations, and activities of state legislators and their staff with respect to the consideration and passage of Act 131 of 2011.

3. **Governor Corbett Subpoena:** Legislative Respondents object to Petitioners' notice of intent to serve a subpoena pursuant to Pa. R.C.P. No. 4009.21 on Governor Corbett, filed with this Court on August 28, 2017.[4] The subpoena seeks all documents referring or relating to the 2011 Plan, including, but not limited to:

> a. All proposals, analyses, memoranda, notes, and calendar entries in whatever medium (*e.g.*, paper, computerized format, e-mail, photograph, audiotape) they are maintained referring or relating to the 2011 Plan.
>
> b. All documents referring or relating to all considerations or criteria that were used to develop the 2011 Plan, such as compactness, contiguity, keeping political units or communities together, equal population, race or ethnicity, incumbent protection, a voter or area's likelihood of supporting Republican or Democratic candidates, and any others.
>
> c. All documents referring or relating to how each consideration or criterion was measured, including the specific data and specific formulas used in assessing compactness and partisanship.
>
> d. All documents referring or relating to how each consideration or criterion affected the 2011 Plan, including any rule or principle guiding the use of each consideration or criteria in developing the 2011 Plan.
>
> e. All communications since January 1, 2009 with any affiliate of the Republican Party, including, but not limited

---

[4] In addition to objecting based on the Speech and Debate Clause, Legislative Respondents also raised objections on the bases of a privilege under the First Amendment, attorney-client privilege, attorney work-product doctrine, deliberative process privilege and executive privilege, and that the requests are overly broad and not relevant to Petitioners' claims.

to, the [RNC, the NRCC, the RSLC, the REDistrictring Majority Project (REDMAP), or the SGLF] that refer or relate to the 2011 Plan.

f. All communications with any consultants, advisors, attorneys, or political scientists referring or relating to the 2011 Plan.

g. All communications with any committees, legislators, or legislative staffers referring or relating to the 2011 Plan.

It not clear from the wording that any and all responsive documents from Governor Corbett would fall within the scope of the indemnity and privilege protected by the Speech and Debate Clause of the Pennsylvania Constitution. Accordingly, the Court will not strike the subpoena outright. Nonetheless, recognizing the Court's inability to compel production of testimony or documents with respect to matters protected by the Speech and Debate Clause of the Pennsylvania Constitution, the categories of documents sought from Governor Corbett SHALL BE INTERPETED as *excluding* those documents that reflect the intentions, motivations, and activities of state legislators and their staff with respect to the consideration and passage of Act 131 of 2011.

4.    Nothing in this Memorandum and Order precludes Legislative Respondents from contesting the admissibility of any document secured from a third party on the basis of legislative immunity and privilege under the Speech and Debate Clause of the Pennsylvania Constitution. To the extent that the categories set forth in the subpoenas may be overbroad or not likely to lead to relevant evidence, the parties and recipients of the subpoenas shall work together to refine the categories in an appropriate and expeditious manner. Nothing in this Memorandum and Order precludes the recipients from interposing their own timely objections following service. Finally, Legislative Respondents cannot raise the Governor's deliberate process privilege or the executive privilege.

13

5. **Attorney-Client Privilege and Attorney Work Product Doctrine:** Legislative Respondents cannot raise objections based on attorney-client privilege or attorney work product doctrine on behalf of entities or persons to whom a subpoena will be directed.

6. **Privilege Log:** Every responsive document withheld pursuant to any asserted privilege or doctrine must be identified on a privilege log served with the response to the subpoena.

7. Petitioners are DIRECTED to serve a copy of this Order with any subpoenas served pursuant to the Order.

8. **Petitioners' First Set of Requests for Production and First Set of Interrogatories**: Petitioners have served on all Respondents a First Set of Requests for Production and First Set of Interrogatories, to which Legislative Respondents interposed objections and claimed privileges, including the protections of the Speech and Debate Clause. The Court, having reviewed the document requests and interrogatories, concludes, based on the above legal analysis, that the Court lacks the authority to compel Legislative Respondents to produce documents or provide information responsive to the interrogatories, as all topics set forth therein fall within the sphere of legitimate legislative activity under the Speech and Debate Clause of the Pennsylvania Constitution. It is, therefore, unnecessary for the Court to address the other objection and privileges raised by the Legislative Respondents.

_____
P. KEVIN BROBSON, Judge

14