IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Angela Couloumbis and           :
Sam Janesch,                     :
                  Petitioners    :    No.  160 C.D. 2022
                                 :
        v.                       :    Argued: December 12, 2022
                                 :
Senate of Pennsylvania,          :
                  Respondent     :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION
BY JUDGE McCULLOUGH                          FILED: July 18, 2023


        Angela Couloumbis and Sam Janesch (collectively, Requesters) petition

for review of the January 28, 2022 Final Determination of the Legislative Reference

Bureau (LRB) Appeals Officer (LRB Appeals Officer), who affirmed the Senate of

Pennsylvania (Senate) Open Records Officer's (Senate ORO) partial denial of the

request for records sought from the Senate of Pennsylvania (Senate) by Requesters

under the Right-to-Know Law (RTKL).[1]  Upon review, we vacate and remand.[2]

## I.      FACTS AND PROCEDURAL HISTORY

---

[1]  Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[2] A separate but similar appeal by Requesters regarding the RTKL and the Pennsylvania
House of Representatives (House) is being decided contemporaneously with this appeal. *See Janesch
v. Pennsylvania House of Representatives* (Pa. Cmwlth., No. 142 C.D. 2022, filed July 18, 2023).  By
Order dated May 9, 2022, this Court denied the joint application of Requesters, the House, and Senate
to consolidate the two appeals because the two cases have separate certified records as they are
appeals from separate entities.  However, because the two appeals are related, the cases were argued
seriately.

The relevant facts of this appeal are not in dispute. On October 15, 2021, Requesters submitted a RTKL request to the Senate ORO, seeking the following: 1) invoices, bills, vouchers, or other financial statements reflecting payment for legal work performed by outside law firms or individual lawyers for the Senate or its employees; 2) engagement or retainer letters signed by any Senate employee or Senate member to provide legal services; 3) expense reports detailing all payments for legal services to outside law firms or individual lawyers hired by the Senate; and 4) any other documents that identify the Senate's legal engagements with outside law firms or lawyers (Request). (Reproduced Record (R.R.) 2a.) The Request covered the period between January 1, 2021, and October 15, 2021. *Id.* On October 19, 2021, the Senate notified Requesters that a 30-day extension was necessary to respond to the request as the response required redacting the records. *See* Section 902(a)(1), (4), and (7) of the RTKL, 65 P.S. §§ 67.902(a)(1), (4), (7); R.R. 8a.

On November 19, 2021, the Senate's ORO granted, in part, and denied, in part, the Request, and in total, provided 1,039 pages electronically to Requesters.[3] (R.R. 4a-8a.) The Senate provided a report of each caucus and the institutional offices, which was followed by copies of engagement letters and financial records covered within that report. The Senate denied the Request, in part, by redacting portions from the produced records.[4] The Senate's ORO explained that three sets of redactions were required under Section 706 of the RTKL, 65 P.S. § 67.706, including: (1) redaction of the Federal Tax identification number found within financial records as it is protected information under 26 U.S.C. § 6103(a); (2) redaction of the bank account numbers and

---

[3] The Senate used a digital sharing platform to share the documents on November 19, 2021. (R.R. 4a.)

[4] Redactions of records otherwise subject to disclosure are deemed denials of a RTKL request. *See* Section 706 of the RTKL, 65 P.S. § 67.706.

2

routing information as a "confidential personal identification number"; and (3) redaction of information protected under the privileges of "attorney[ ]work product doctrine" and/or "attorney-client privilege" found within the lines of engagement letters and invoices outlining billable hours. (R.R. 4a-7a.) Moreover, the Senate stated:

> In providing access to the legal engagement letters and invoices, redactions were made in consideration of *Levy v. Senate of [Pennsylvania]*, 65 A.3d 361, 373 (Pa. 2013) (approving redactions to legal invoices on attorney[-]client privilege grounds, holding descriptions of legal services that address the client's motive for seeking counsel, legal advice, strategy, or other confidential communications are undeniably protected under the attorney[-]client privilege) and the attorney[ ]work product doctrine which allows the protection of the mental impressions and processes of an attorney acting on behalf of a client, regardless of whether the work product was prepared in anticipation of litigation. *Bousamra v. Excela Health*, 210 A.3d 967, 976 (Pa. 2019).

(R.R. 6a.) (internal quotations omitted).

On December 8, 2021, Requesters appealed the Senate ORO's redactions to the Senate Appeals Officer, who recused, and the appeal was transferred to the LRB. (R.R. 10a-14a.) In their appeal, Requesters specifically challenged the redactions based on the attorney-client privilege and work product doctrine, and asserted the redactions were inappropriate under the Sunshine Act.[5] Requesters also argued the Senate had not provided any evidence showing that the privileges claimed applied. (R.R. 13a.) Requesters requested that the LRB order all redactions be unveiled or, in the alternative, the LRB conduct *in camera* review of the records at issue.

---

[5] 65 Pa. C.S. §§ 701-716.

3

The Senate submitted a memorandum of law to the LRB reiterating it had properly redacted the records pursuant to the attorney-client and work product privileges, and further added that "many of the records produced to [Requesters] were also redacted on [the] basis of the speech and debate privilege." (R.R. 224a.) In support, the Senate submitted a privilege log (Privilege Log) and four attestations of (1) Crystal H. Clark, Esq., General Counsel to the Senate Republican Caucus; (2) Megan Martin, Secretary of the Senate; (3) C.J. Hafner, II, Esq., Chief Counsel to the Senate Democratic Leader; and (4) Michael A. Sarfert, Esq., Counsel to the Senate Chief Clerk (Attestations). (R.R. 311a-61a.)

The Privilege Log includes:

1) The record type;

2) The record dates;

3) The authors;

4) The recipients;

5) A description of the legal work; and

6) The legal basis for the redaction.

(R.R. 348a-61a.) The Attestations each include, among other items, the following:

1) The attestant's name, position, and job responsibilities;

2) The attestant's familiarity with the Request;

3) The details of the searches each performed for responsive documents;

4) The individual attorneys and law firms who generated responsive documents;

5) The specific categories, subjects, and topics of information that were redacted from the Request; and

4

6) The rationale why information was redacted under attorney-client, work product, and speech and debate privileges.

(R.R. 311a-61a.) Additionally, one of the Attestations includes a specific example showing how the redactions were performed in a scenario where the subject matter was repeated in the engagement letter and the invoice. (R.R. 314a.) The Senate asserted that its comprehensive Privilege Log and four Attestations established that the redactions made to the 1,039 pages of records produced to Requesters were appropriate and justified. Furthermore, the Senate argued the Senate ORO's "limited and focused" redactions of certain aspects of the records were necessary to preserve privilege. (R.R. 215a.)

By a decision dated January 28, 2022, the LRB Appeals Officer affirmed the partial denial of the Request. (Requesters' Br., Ex. A.) The LRB Appeals Officer concluded that the redactions found in the produced engagement letters and invoice captions "were based on attorney-client 'privilege' or attorney[ ]work product doctrine." (Requesters' Br., Ex. A at 16-117.) The LRB Appeals Officer further concluded that Requesters failed to "provide[] any factual basis for objecting" to the Senate's "characterization" that redactions based on the speech and debate privilege were "limited to those portions of the records containing descriptions of specific legal work performed within the sphere of legislative activity and confidential communications with legal counsel concerning legislative matters." (Requesters' Br., Ex. A at 11.) The LRB Appeals Officer determined that Requesters' reliance on the Sunshine Act was misplaced as the appeal does not involve a public meeting. (Requesters' Br., Ex. A at 12.) The LRB Appeals Officers expressly rejected Requesters' demand for *in*[ ]*camera* review holding that "*in-camera* inspection would be inappropriate and unnecessarily intrude upon privilege." (Requesters' Br., Ex. A at

5

8.)    The LRB Appeals Officer conducted a line-by-line review of the produced documents and determined that "[a] focus on the redacted portion of each document verified that the likely content of the shaded sections is subject to redaction as a description of 'the client's motive for seeking counsel, legal advice, strategy, or other confidential communications[.]'" *Id.*

Thereafter, Requesters petitioned for review to this Court.

## II.    ISSUES PRESENTED[6]

On appeal, Requesters assert the LRB erred in concluding that the Senate's redactions of subject matter of outside attorneys' services from engagement letters and invoice captions was proper under the RTKL.  Requesters have narrowed the scope of their appeal and challenge only the redactions made to 24 of the 1,039 pages produced, arguing that the redacted information is not subject to attorney-client privilege, the work product privilege, or the speech and debate privilege.  (Requesters' Br. at 9, 15-16.)

Ultimately, Requesters are asking this Court to order either that the Request be released immediately or that the LRB hold a hearing and review the Request *in camera*.  Requesters rely on the Pennsylvania Supreme Court's interpretation of the RTKL in *Levy*, 65 A.3d 361, and argue an *in camera* review of the records is warranted because the engagement letters and invoice captions are unlikely to reveal privileged information.  Additionally, Requesters argue that, like the information at issue in *Reading Eagle Co. v. Council of City of Reading*, 627 A.2d 305 (Pa. Cmwlth. 1993),

---

[6] Initially, Requesters objected to Kleinbard LLC's representation of the Senate in this matter as the firm was among those whose records were subject to the Request and Requesters' redaction challenges.  The LRB Appeals Officer concluded that Kleinbard LLC was not required to withdraw its representation.  (Requesters' Br., Ex. A at 6-7).  Requesters no longer seek review of that portion of the LRB Appeals Officer's Final Determination.

6

which was necessary to fulfilling the purposes of the Sunshine Act, the information at issue in this case is necessary to fulfilling the purposes of the RTKL.

## III. DISCUSSION

### A. Standard and Scope of Review

When deciding questions of law under the RTKL, such as whether certain information is exempt from disclosure by the attorney-client, attorney work product, or speech and debate privileges, our scope of review is plenary, and our standard of review is *de novo*. *Levy v. Senate of Pennsylvania*, 34 A.3d 243 (Pa. Cmwlth. 2011) (*Levy II*). In reviewing matters under Section 1301 of the RTKL, 65 P.S. § 67.1301 (pertaining to Commonwealth, legislative,[7] and judicial agencies or a judicial agency), "we act in our appellate jurisdiction, but we independently review the appeals officer's orders, and we may substitute our own findings of fact." *Id.* (citing *Bowling v. Office of Open Records*, 990 A.2d 813, 818 (Pa. Cmwlth. 2010) (*en banc*)). *See also Padgett v. Pennsylvania State Police*, 73 A.3d 644, 646 n.3 (Pa. Cmwlth. 2013).

### B. Applicable Law

#### 1. Privilege Generally

The RTKL is "designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions." *Pennsylvania State Police v. McGill*, 83 A.2d 476, 479 (Pa. Cmwlth. 2014). The exceptions to disclosure of public records must narrowly be construed. *Id.*

Pursuant to Section 701(a) of the RTKL, legislative or financial records generally are accessible to the public unless otherwise provided by law. 65 P.S. §

---

[7] The Senate is a "legislative agency." Section 102 of the RTKL, 65 P.S. § 67.102.

7

67.701(a).  Similarly, legislative records[8] in the possession of a legislative agency are presumed to be available to the public unless exempted under Section 708 of the RTKL, 65 P.S. § 67.708, exempted under any other Federal or State law, regulation, or judicial order or decree, or are protected by a privilege.  Section 305(b) of the RTKL, 65 P.S. § 67.305(b).  Privileged documents also are excluded from the definition of "public record" under Section 102 of the RTKL, 65 P.S. § 67.102.  The RTKL defines privilege to include "[t]he attorney[ ]work product doctrine, the attorney-client privilege, the doctor-patient privilege, the speech and debate privilege or other privilege recognized by a court interpreting the laws of this Commonwealth."  *Id.*  Although an agency has some discretion under the RTKL to release otherwise exempt records, it lacks discretion to release a privileged record.  Section 506(c)(2) of the RTKL, 65 P.S. § 67.506(c)(2).  The RTKL permits the redaction of the "information which is not subject to access" should the legislative record contain information that is protected by privilege.  Section 706 of the RTKL, 65 P.S. § 67.706.

Where an agency is asserting a privilege, the agency bears the burden of proof to demonstrate by sufficient facts that the privilege applies.  *Levy*, 34 A.3d at 249 (citing, in part, *Department of Transportation v. Office of Open Records*, 7 A.3d 329, 335 (Pa. Cmwlth. 2010)).  *See also* Section 903(2) of the RTKL, 65 P.S. § 67.903(2) (where an agency denies a RTKL request, in whole or in part, the agency must state in writing the "specific reasons for the denial, including a citation of supporting legal authority").

## 2.  The *Levy* Decisions

Because the *Levy* decisions decided by this Court and the Pennsylvania Supreme Court are germane to this appeal, we begin by reviewing them here at length.

---

[8] Legislative records include financial records.  Section 102 of the RTKL, 65 P.S. § 67.102.

All three decisions involve the same set of facts and the same two RTKL requests. In *Levy II*, we considered the appeal of Marc Levy, an Associated Press Member, from the decision of the Pennsylvania Senate's Open Records Appeals Officer. Levy requested documents in categories very similar to those involved in this case: bills, contracts, and payment records relating to the retention of outside counsel by one individual senator and any current or former member of the Senate Democratic Caucus. The Senate produced many responsive records with substantial redactions of both client identities and descriptions of the legal work provided, relying on the attorney-client privilege to justify the redactions. Levy appealed. Before the Senate Appeals Officer, the Senate asserted additional reasons for the redactions, including the attorney work product privilege and the grand jury and criminal investigation exemptions. The Senate Appeals Officer ultimately concluded that the Senate had not provided sufficient information to satisfy all of the elements of the attorney-client privilege and accordingly permitted the Senate to supplement the record with affidavits or other additional evidence. Levy appealed to this Court before the Senate provided any further evidence. *Levy I*, 34 A.3d at 244-45.

This Court ordered *in camera* review of the Senate's redactions by Senior Judge James R. Kelley, acting as Special Master. After receiving Special Master Judge Kelley's report and recommendations, an *en banc* panel of this Court concluded that client identities and most general descriptions of legal services were not protected by the attorney-client privilege. We further concluded, however, that specific legal descriptions that would reveal confidential communications between attorney and client appropriately were redacted. We finally concluded that the Senate had waived all alternative legal grounds supporting the redactions because it raised them for the

9

first time before the Senate Appeals Officer. We accordingly affirmed, in part, and reversed, in part, the Senate Appeals Officer's final determination. *Id.* at 250-52, 255.

The Pennsylvania Supreme Court granted the Senate's allocatur petition to consider three issues: (1) whether client identities are protected by the attorney-client privilege, (2) whether descriptions of legal services are protected by the attorney-client privilege, and (3) whether an agency waives any reasons for non-disclosure that were not asserted in the initial written denial. *Levy II*, 65 A.3d at 367. The Pennsylvania Supreme Court ultimately affirmed this Court's decision that client identities and general descriptions of legal services are not protected by the attorney-client privilege. The Pennsylvania Supreme Court reversed, however, our determination that the Senate had waived its alternative grounds for non-disclosure. The Court, therefore, remanded to this Court for our consideration of whether the attorney work product privilege, grand jury secrecy, and criminal investigation exemptions applied to support the Senate's redactions. *Id.* at 383. On remand, in pertinent part, we concluded that the attorney work product privilege did not protect from disclosure general descriptions of legal services. *Levy v. Senate of Pennsylvania*, 94 A.3d 436, 444 (Pa. Cmwlth. 2014) (*Levy III*). Specific descriptions of legal services, however, as we concluded in *Levy I*, remain protected by the attorney-client privilege. *Id.* at 444 n.9.

### 3. Attorney-Client Privilege

The Pennsylvania Supreme Court in *Levy II* summarized as follows the attorney-client privilege, particularly as it relates to the purposes of the RTKL:

> [The Pennsylvania Supreme Court] has repeatedly noted that the attorney-client privilege is deeply rooted in our common law and is the most revered of our common law privileges. The General Assembly has defined attorney-client privilege identically for

10

purposes of criminal and civil law . . . .[9] We recently observed that the purpose of the attorney-client privilege is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. We acknowledged, however, that the attorney-client privilege is often in tension with the truth-determining process of the justice system, and, in this case, with the RTKL's goal of government transparency. In balancing these competing purposes, we note that not all information passed between client and attorney is privileged, but rather the privilege is limited to communications related to the legal advice sought by the client.

*Levy II*, 65 A.3d at 368-69. *See also Levy I*, 34 A.3d at 248 (internal citations and quotations omitted). Further,

the determination of the applicability of the attorney-client privilege does not turn on the category of the information, such as a client's identity or address, or the category of a document, such as whether it is an invoice or fee agreement. Instead, the relevant question is whether the content of the writing will result in disclosure of information otherwise protected by the attorney-client privilege. For example, descriptions of legal services that address the client's motive for seeking counsel, legal advice, strategy, or other confidential communications are undeniably protected under the attorney client privilege. In contrast, an entry that generically states that counsel made a telephone call for a specific amount of time to the client is not information protected by the attorney-client privilege but, instead, is subject to disclosure under the specific provisions of the RTKL.

_____

[9] *See* 42 Pa. C.S. §§ 5916, 5928 ("[In a criminal or civil matter,] counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.").

11

*Id.* at 606 (internal citation omitted).[10]  To establish the application of the attorney-client privilege, an agency must demonstrate the following:

> (1)   The asserted holder of the privilege is or sought to become a client;
>
> (2)   The person to whom the communication was made is a member of the bar of a court, or his subordinate;
>
> (3)   The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort; and
>
> (4)   The privilege has been claimed and is not waived by the client.

*Pennsylvania Department of Education v. Bagwell* (*Bagwell 2015*), 114 A.3d 1113, 1123-24 (Pa. Cmwlth. 2015) (citing, in part, *Nationwide Mutual Insurance Company v. Fleming*, 924 A.2d 1259 (Pa. Super. 2007), *aff'd by an equally divided court*, 992 A.2d 65 (Pa. 2010)).

---

[10] Senior Judge Kelley, Special Master in *Levy I*, concluded as follows regarding whether and to what extent descriptions of legal services may be redacted under the attorney-client privilege:

> To the extent that the documents specify the issues or laws researched by the attorneys, specific services provided and the names of individuals with whom the attorneys communicated, the Special Master agrees that such information has the potential to reveal the confidential communications shared by attorney and client, the motive of the client in seeking representation and litigation strategy, and is privileged.  However, to the extent that the redacted information relates to the general nature of the services performed, e.g., memo, telephone call, research, such general descriptions of the work performed are not subject to the attorney-client privilege and are not entitled to redaction.

*Levy I*, 34 A.3d at 257.  *See also Levy II*, 65 A.3d at 373 ("[W]e approve . . . Special Master Judge Kelley's careful line-by-line analysis . . . .").

**4. Work Product Privilege**

This Court, in *Levy III*, described as follows the attorney work product privilege and its interplay with the RTKL as follows:

> Application of the attorney work[ ]product [privilege] is described in [Pennsylvania Rule of Civil Procedure (Pa. R.Civ.P.)] 4003.3, which precludes "disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories." In the RTKL context, the doctrine protects the mental impressions, theories, notes, strategies, research and the like created by an attorney in the course of his or her professional duties, particularly in anticipation or prevention of litigation from disclosure.
>
> The work[ ]product [privilege], while closely related to the attorney-client privilege, provides broader protection. The doctrine protects any material prepared by the attorney in anticipation of litigation, regardless of whether it is confidential. The underlying purpose of the work product doctrine is to guard the mental processes of an attorney, providing a privileged area within which he can analyze and prepare his client's case. The purpose is not to shield mundane and uninforming entries in billing records, such as the bare fact that a telephone conference occurred.

*Levy III*, 94 A.3d at 446 (internal citations and most internal quotations omitted). *See also BouSamra v. Excela Health*, 210 A.3d 967 (Pa. 2019); *Heavens v. Pennsylvania Department of Environmental Protection*, 65 A.3d 1069, 1077 (Pa. Cmwlth. 2013). In considering the distinction between unprotected general descriptions of legal services and non-disclosable descriptions that would reveal protected information, we reasoned:

> Although the general descriptions such as drafting a memo, making telephone call, performing research, observing a trial, reflect work performed, without further detail[ ] they do not reveal an attorney's mental impressions, theories, notes, strategies,

research and the like. Disclosure of the general tasks performed in connection with the fee charged reveals nothing about litigation strategy. They simply explain the generic nature of the service performed and justify the charges for legal services rendered. Where, as here, the taxpayers are footing the bill for the legal services, they are entitled to know the general nature of the services provided for the fees charged. Thus, we conclude such rote entries regarding the general nature of legal services performed are not entitled to protection under the work[ ]product doctrine.

*Levy III*, 94 A.3d at 444 (internal citations and footnote omitted).

### 5. Speech and Debate Privilege

In addition to the attorney-client privilege and work product privilege, the RTKL also defines the speech and debate privilege. Section 102 of the RTKL, 65 P.S. § 67.102. Importantly, not all activities of state legislators are protected by the speech and debate privilege. *League of Women Voters of Pennsylvania v. Commonwealth*, 177 A.3d 1000, 1005 (Pa. Cmwlth. 2017) (*League of Women Voters I*). To assert the speech and debate privilege, the agency asserting the privilege must establish that the information concerns activity "within the sphere of legitimate legislative activity." *Id.* "Legitimate legislative activities" include "fact-finding, information gathering, and investigative activities, which are essential prerequisites to the drafting of bills and the enlightened debate over proposed legislation." *Id.* at 1003 (quoting *Government of the Virgin Islands v. Lee*, 755 F.2d 514, 521 (3d Cir. 1985)).

### C. Analysis

Requesters do not dispute that the attorney-client and work product privileges apply to RTKL requests for legislative records and may support redactions of privileged information. They also do not argue that the Senate has made redactions of client identities or general descriptions of legal services in direct violation of the

*Levy* decisions. Rather, Requesters contend that the Senate's proffered evidence is "vague and conclusory." (Requesters' Br. at 18.) Requesters further assert the Senate has not met its burden of establishing the speech and debate privilege as the evidence is "boilerplate recitations" of the privilege parameters. (Requesters' Br. at 22.) We address Requesters' issues in turn.

### 1. Subject Matters

Requesters argue that the Senate and the LRB interpreted the *Levy* decisions too broadly to protect general description of the subject matters of the Senate's legal representation by outside firms. Requesters argue that the Senate redacted general information that is "highly unlikely to convey client confidences or otherwise fall within the ambit of one of the Senate's asserted privileges." (Requesters' Br. at 11.) Requesters contend that subject matters in engagement letters and invoices may be protected by the attorney-client and work product privileges, but only, under *Levy II*, where the revelation of those subject matters would reveal the client's motive for seeking legal counsel, legal advice, strategy, or other confidential communications. (Requesters' Br. at 21.) Requesters argue that "[t]he public needs to know the general subject matter of the Senate's legal engagements in order to 'scrutinize the actions of public officials' and to 'make public officials accountable for their actions' – the RTKL's central aims." (Requesters' Br. at 21-22.) Requesters further argue that "[p]ublic scrutiny can have only a limited effect if the Senate is permitted to conceal from the public even the most basic, general information about its reasons for engaging outside attorneys." (Requesters' Br. at 22.)

Pursuant to the *Levy* decisions, general descriptions of legal services, *i.e.*, that a lawyer made a telephone call, had a meeting, or sat in conference with other lawyers or the client, are not protected and may not be redacted from attorney invoices

15

or engagement letters. Specific descriptions of legal services that would divulge confidential client communications or an attorney's mental impressions, legal theories or analysis, notes, strategies, and the like are protected. *Levy II*, 65 A.3d at 373; *Levy I*, 34 A.3d at 254; *Levy III*, 94 A.3d at 444. These are the only general categories of privileged information of which the *Levy* decisions speak. Their application and the propriety of any redactions made by an agency to a RTKL document production on the grounds of privilege must be addressed on a case-by-case basis. Thus, whether subject matters in engagement letters and invoices may be redacted depends on whether their disclosure would compromise the protection of the confidential information identified above. If not, then the privileges do not apply and the subject matters must be disclosed.

Here, the Senate redacted subject matters from the 24 engagement letters and invoices in dispute. The information remaining on the engagement letters and invoices is general information revealing that outside legal counsel was retained, hourly rate, and billable hours, among other information. The Senate's Privilege Log and Attestations explain that the redactions were made because the 24 subject matters would reveal client motives for seeking counsel or some other category of protected information. Moreover, the Attestations provide a general description of the legal services provided, *i.e.*, phone calls with clients and drafting of legal documents, and the Privilege Log provides more specific information, *i.e.*, legal advice regarding labor and employment matters. (R.R. 348a-61a.) We conclude that although the Senate asserts the categorical protection of production of subject matters of legal representations, whether contained in engagement letters or invoices, the *Levy* decisions do not provide for such categorical protection. Rather, each subject matter is to be analyzed independently to determine whether its disclosure would compromise

16

confidential information. Thus, to determine whether the Senate appropriately redacted the subject matters, we must determine whether the Attestations and the Privilege Log were sufficient.

### 2. Attestations and Privilege Log

One method an agency may use in meeting the burden of proof that a record is exempt from disclosure is through relevant and credible testimonial affidavits or attestations. *Payne v. Pennsylvania Department of Health*, 240 A.3d 221, 226 (Pa. Cmwlth. 2020); *Sherry v. Radnor Township School District*, 20 A.3d 515, 520-21 (Pa. Cmwlth. 2011). In addition, a privilege log can serve as sufficient evidence to establish that a record is exempt from disclosure, particularly where the information in the log is bolstered with averments in an attestation. *Smith on behalf of Smith Butz, LLC v. Pennsylvania Department of Environmental Protection*, 161 A.3d 1049, 1059 n.5 (Pa. Cmwlth. 2017). Privilege logs typically list the date, record type, author, recipients, and description of the withheld record. *Id.*

Here, the Senate provided three relevant Attestations addressing the redactions and the Senate's asserted privileges.[11] These Attestations include conflicting statements of what was redacted from the documents. Specifically, the Attestation of Michael A. Sarfert, Esq., states: "With regard to the redactions for attorney-client privileged information, **I was careful to not make any blanket redactions**." (R.R. 340a) (emphasis added). However, two Attestations state that the subject matter of an engagement is redacted from engagement letters and the file name assigned by outside counsel in most circumstances or situations "**where the**

_____

[11] The Senate submitted four Attestations in support of all redactions made to the 1,039 pages of records produced in response to the Request. (R.R. 312a-46a.) This appeal is limited to 24 pages of the original 1,039 pages produced, and therefore, because the Attestation of Secretary Megan Martin does not reference the 24 pages in dispute, this Attestation can be disregarded for the purposes of this appeal. (R.R. 335a-37a.)

17

**representation is not otherwise a matter of public record in a court of law**." (R.R. 314a, 330a., 341a-42a) (emphasis added). Thus, the Attestations contradict themselves by stating no blanket redactions were done, but then stating the Senate categorically redacted information if the litigation is not filed in a court of law. The *Levy* decisions do not support such blanket redactions because subject matter redactions must be done on a case-by-case basis. Moreover, the example provided in Crystal H. Clark, Esq.'s Attestation describing an engagement letter, invoice, and file name to all include "medical marijuana" is inapposite. Although the example provided for consistent redactions across all applicable documents, "medical marijuana" does not reveal privileged information such as mental impressions of an attorney or motive for the legal engagement. Therefore, we conclude that based on the Attestations, we do not have enough information to determine whether the Senate met its burden to establish the applicability of any of the privileges it asserts.

Next, we turn to the Senate's Privilege Log. The Senate's Privilege Log notes the following reason for the redactions at issue: "Engagement letter and legal invoices reflecting confidential communications with client for purposes of securing legal advice *regarding legislative matter and describing legal services performed regarding same*[.]" (R.R. 350a-61a.) (emphasis added). We note the Privilege Log asserts for these same documents a combination of attorney-client, work product, and speech and debate privileges. This blurs the line between these privileges. Moreover, the type of information contained in engagement letters and captions of invoices is unlikely to reveal "a fact of which the attorney was informed by the client, without the presence of strangers, for the purpose of securing an opinion of law, legal services or assistance in a legal matter." *Pennsylvania Department of Education v. Bagwell*, 131 A.3d 638, 656 (Pa. Cmwlth. 2016) (*Bagwell 2016*) (citation omitted). This information

18

in engagement letters and captions of invoices also is unlikely to reveal "the mental impressions" of any attorney involved. *Id.* at 657 (citation omitted). Neither attorney-client nor work product privilege protects "mere facts." *Id.* at 657 (citation omitted). The Privilege Log states only generally that the engagement letters and invoices contained "confidential communications with client for purposes of securing legal advice." (R.R. 350a-61a.) We, therefore, conclude that based upon the information provided in the Privilege Log, we cannot determine whether the redactions were appropriately made pursuant to both the attorney-client and work product privileges.[12]

### 3. *In Camera* Review

It is well established that where an agency sufficiently explains the basis for non-disclosure through attestation, privilege log, or both, *in camera* review is not necessary. *UnitedHealthcare of Pennsylvania, Inc. v. Pennsylvania Department of Human Services*, 187 A.3d 1046, 1060 (Pa. Cmwlth. 2018). As in *Levy I*, *in camera* review in certain circumstances is both available and helpful to this Court in deciding RTKL matters. Because, without more information we cannot determine if the Senate has met its burden to establish the applicability of either the attorney-client or work product privileges to its redactions, we conclude that *in camera* review is necessary.

### D. CONCLUSION

---

[12] Although we conclude that the Attestations and Privilege Log are inadequate to enable us to determine whether the Senate's redactions are appropriate on any of the asserted grounds, we nevertheless conclude that, in any event, the speech and debate privilege was not created for the types of records subject to this Request. The Pennsylvania Supreme Court has disapproved that such a testimonial privilege exists and stated, in dicta: "[t]his Court has never interpreted our Speech and Debate Clause as providing anything more than immunity from suit, in certain circumstances, for individual members of the General Assembly." *League of Women Voters of Pennsylvania v. Commonwealth*, 178 A.3d 737, 767 n.38 (Pa. 2018). Therefore, we conclude that the speech and debate privilege categorically cannot protect subject matters in engagement letters and invoices and therefore may not be relied upon by the Senate to support its redactions.

For the foregoing reasons, we remand for *in camera* review by the LRB Appeals Officer of only the subject matters contained in the engagement letters and invoice captions identified by Requesters in the Reproduced Record from pages 364a to 387a.[13] Accordingly, we vacate the LRB Appeals Officer's Final Determination and remand with further instructions.

_____
PATRICIA A. McCULLOUGH, Judge

---

[13] The challenged redactions correspond with entries in the Senate's Privilege Log that can be found in the Reproduced Record at pages 349a, 350a, 355a, 357a, 359a, and 361a.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Angela Couloumbis and : 
Sam Janesch, : 
          Petitioners :   No. 160 C.D. 2022
       : 
      v. : 
       : 
Senate of Pennsylvania, : 
          Respondent : 

## *ORDER*

AND NOW, this 18th day of July, 2023, the Final Determination of the Legislative Reference Bureau (LRB) Appeals Officer dated January 28, 2022 is hereby VACATED. This matter is REMANDED to the LRB to hold an *in camera* review to determine whether only the subject matters contained in the engagement letters and invoice captions identified the Reproduced Record from pages 364a to 387a are exempt from disclosure under either the attorney-client or work product privileges. The LRB need not consider whether any redactions are supported by the speech and debate privilege.

The Senate shall produce to the LRB for *in camera* inspection unredacted copies of the responsive documents challenged in this appeal. The LRB shall issue a determination regarding the validity of the Senate's redactions within 180 days of the date of this Order. Those documents which the LRB determines are protected by those privileges shall not be unredacted by the Senate of Pennsylvania to Angela Couloumbis and Sam Janesch. The Senate may appeal any directed disclosure in accordance with the Right-to-Know Law, Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge