IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mahmoud Ghaderi, D.O.,                  :
                                        :
                    Petitioner          :
                                        :
          v.                            : No. 23 C.D. 2024
                                        : Submitted: October 8, 2024
State Board of Osteopathic              :
Medicine,                               :
                                        :
                    Respondent          :


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                          FILED:  December 24, 2024


          Mahmoud Ghaderi, D.O. (Doctor), *pro se*, petitions for review of the
Final Adjudication and Order (Order) of the Bureau of Professional and
Occupational Affairs (Bureau), State Board of Osteopathic Medicine (Board),
reversing a Hearing Examiner's Proposed Adjudication and Order (decision), and
denying Doctor's Petition for Reinstatement of the License to Practice as
Osteopathic Physician and Surgeon (Reinstatement Petition), following remand by
this Court in *Ghaderi v. State Board of Osteopathic Medicine*, 302 A.3d 240 (Pa.
Cmwlth. 2023) (*Ghaderi I*).  We vacate and remand.

          We have previously summarized the record facts of this case as follows:

[Doctor] is an osteopathic physician and surgeon who first obtained a license to practice in Pennsylvania in 1994. On or about July 23, 2018, [he] pled *nolo contendere* to one count of misdemeanor indecent assault, 18 Pa. C.S. §3126(a)(1), resulting from his sexual abuse of a patient.[1] His sentence included 3 months of intermediate punishment, 2 years of probation, costs of $3,492.50, and 15 years of registration as a sexual offender. [Doctor] entered into a consent agreement and order ([Agreement]), which the Board approved and adopted on June 12, 2019. Under the [Agreement], [Doctor's] license to practice was suspended indefinitely, but he could obtain reinstatement by demonstrating his ability to practice "safely and competently," among other things.[2]

---

[1] Section 3126(a)(1) of the Crimes Code defines "indecent assault," in pertinent part, as follows:

> (a) Offense defined.--A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:
>
> (1) the person does so without the complainant's consent[.]

18 Pa. C.S. §3126(a)(1).

[2] As this Court noted:

> In the [Agreement], [Doctor also] stipulated to violations of both Section 15(a)(3) of the Osteopathic Medical Practice Act [(DO Act), Act of October 5, 1978, P.L. 1109, *as amended*], 63 P.S. §271.15(a)(3), and Section 9124(c)(2) of the Criminal History Record Information Act, 18 Pa. C.S. §9124(c)(2), which provided the Board "may refuse to grant or renew, or may suspend or revoke any license, certificate, registration or permit . . . [w]here the applicant has been convicted of a misdemeanor which relates to the

**(Footnote continued on next page…)**

Consistent with the [Agreement's] provisions, Pennsylvania law at the time the Board suspended [Doctor's] license did not prohibit him from seeking reinstatement. Section 15(a)(3) of the [DO Act], 63 P.S. §271.15(a)(3), provided merely that the Board could refuse, revoke, or suspend a license due to "[c]onviction of a felony, a crime involving moral turpitude, or a crime related to the practice of osteopathic medicine." In any circumstance where the Board found a license could be refused, revoked, or suspended, it had the discretion to "[s]uspend enforcement of its finding thereof and place a licensee on probation with the right to vacate the probationary order for noncompliance." Section 15(c)(5) of the [DO Act], 63 P.S. §271.15(c)(5). The Board could also "[r]estore or reissue a license to practice osteopathic medicine and surgery . . . and impose any disciplinary or corrective measure which it might originally have imposed." 63 P.S. §271.15(c)(6).

About a year after [Doctor] entered into the [Agreement], however, Pennsylvania's General Assembly passed [Chapter 31 of the law governing the Bureau, licensing boards, and licensing commissions, 63 Pa. C.S. §§ 3101-3118 (Chapter 31),] into law. [This] includes new provisions governing the licensing of individuals who commit sexual offenses. Under 63 Pa. C.S. §3113(d), "[w]hen determining eligibility for licensure as a health care practitioner, a licensing board or licensing commission may not issue a license, registration, certificate or permit or otherwise allow an individual to practice as a health care practitioner if the individual has been convicted of a sexual offense." Meanwhile, 63 Pa. C.S. § 3113(i) defines "sexual offense" to include "[a]ny of the offenses enumerated in 18 Pa. C.S. Ch. 31 (relating to sexual offenses)." This, of course, includes an indecent assault conviction under 18 Pa. C.S. §3126(a)(1). [Chapter 31] provides that Section 3113, containing these more restrictive provisions, "shall apply to official acts

---

trade, occupation or profession for which the license, certificate, registration or permit is sought."

*Ghaderi I*, 302 A.3d at 242 n.3.

and matters, including disciplinary matters, related to the issuance of licenses, certificates, registrations or permits by licensing boards or licensing commissions beginning on or after 180 days after the effective date of this section," or on December 28, 2020.

On October 28, 2020, [Doctor] filed a petition to "stay" the indefinite suspension of his license "in favor of a reasonable period of probation." [He] averred he completed the probation portion of his criminal sentence. In addition, [he] averred he completed sexual offender counseling. He attached a discharge report from his counselor, Lauren Kossler, M.Ed., LPC (Kossler), who opined he was "at a low average risk for any future sexual recidivism." Kossler further opined, "with a reasonable degree of professionalism," that he was fit to resume practicing medicine.

* * *

[At the December 9, 2020 hearing, Doctor] presented his case-in-chief, in which he attempted to establish he could "safely and competently practice medicine at this time." [Doctor] testified on his own behalf. He also presented testimony from Frank Shannon, his probation officer; Kossler, who the [H]earing [E]xaminer accepted as an expert in evaluating the likelihood of sexual offender recidivism; and various character witnesses. Notably, [Doctor] described the circumstances leading to his *nolo contendere* plea as a mere "misunderstanding" and denied he ever "did anything improper." Counsel for the Commonwealth did not present any testimony of his own and indicated he was not taking a position on the [merits of the] proceedings "at this time." Counsel explained he intended to "create as thorough a record as possible" for the benefit of the Board.

*Ghaderi I*, 302 A.3d at 242-44 (citations and footnotes omitted).

On May 18, 2021, the Hearing Examiner issued a proposed adjudication and order recommending the reinstatement of Doctor's license. Although the Hearing Examiner expressed concern regarding Doctor's

4

"longstanding denial that there was any sexual component to his criminal offense," he explained that "he would defer to Kossler's opinion that [Doctor] was unlikely to reoffend, since she 'regularly works upon referral from the criminal justice system.'" *Ghaderi I*, 302 A.3d at 244. With respect to the application of Chapter 31, the Hearing Examiner explained "that the General Assembly intended its prohibition on licensing sexual offenders to apply to someone with an existing, suspended license." *Id.*

The Board indicated its intent to review the Hearing Examiner's proposed adjudication and order. On May 5, 2022, the Board issued a final adjudication and order "rejecting the Hearing Examiner's recommendation and denying [Doctor's] petition, because "the [H]earing [E]xaminer's retroactivity analysis was not one [he] was 'authorized to adopt' and applied [Chapter 31's] prohibition on licensing sexual offenders to [Doctor]." *Ghaderi I*, 302 A.3d at 244.

On Doctor's appeal to this Court, we determined that Doctor "maintains a property right in his suspended osteopathic medical license, which Section 3113(d) would eliminate," so that Chapter 31 "is substantive law and cannot apply to [Doctor] retroactively in the absence of express legislative intent." *Ghaderi I*, 302 A.3d at 246. Accordingly, we issued the following Order:

> [The Board's] May 5, 2022 final adjudication and order is hereby **VACATED**, and the case is **REMANDED** consistent with the foregoing opinion. The Board must rule on the [Doctor's petition] seeking reinstatement of his license to practice osteopathic medicine, without applying 63 Pa. C.S. §3113(d). The Board's request that the Court remand for a second evidentiary hearing is **DENIED**. The Board shall reach a decision using the existing record, particularly the evidence already presented at the hearing on December 9, 2020, and issue a new order from which an appeal may be taken.

*Id.* at 247 (emphasis in original).

However, on remand the Hearing Examiner again recommended the reinstatement of Doctor's license, and the Board again issued the Order reversing the Hearing Examiner's recommendation and denying reinstatement. However, on remand, the Board applied the criteria in Section 3113(b) in determining that Doctor's *nolo contendere* plea to the charge of indecent assault was disqualifying. Doctor then filed the instant petition for review.[3]

On appeal, Doctor claims: (1) the Board's Order is too severe a sanction, a flagrant abuse of discretion, in bad faith, and capricious; (2) the Board's determination that Doctor lacks honesty and integrity is a flagrant abuse of discretion, in bad faith, and capricious; and (3) the Board erred as a matter of law in relying on Doctor's status as a required reporter under the statute commonly referred to as "SORNA II."[4]

---

[3] This Court's review of the Board's Order denying Doctor's license reinstatement is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Almusa v. State Board of Medicine*, 298 A.3d 547, 556 (Pa. Cmwlth. 2023), *appeal granted*, 316 A.3d 617 (Pa. 2024).

[4] Although Doctor refers to "Megan's Law" in his appellate brief, we refer herein to the relevant statute as "SORNA II." As this Court has explained:

> In *Dougherty v. Pennsylvania State Police*, 138 A.3d 152[, 155 n.8] (Pa. Cmwlth. 2016)[,] we explained the history of sex offender registration statutes in Pennsylvania, including SORNA II, as follows:
>
>> Courts have [] referred to [Pennsylvania's Sex Offender Registration and Notification Act (SORNA)] as the Adam Walsh Act. SORNA is the General Assembly's fourth enactment of the law commonly referred to as Megan's Law. Megan's

**(Footnote continued on next page…)**

Law I, the Act of October 24, 1995, P.L. 1079 (Spec. Sess. No. 1), was enacted on October 24, 1995, and became effective 180 days thereafter. Megan's Law II was enacted on May 10, 2000[,] in response to Megan's Law I being ruled unconstitutional by our Supreme Court in *Commonwealth v. Williams*, [733 A.2d 593 (Pa. 1999)]. Our Supreme Court held that some portions of Megan's Law II were unconstitutional in *Commonwealth v.* [*Williams*, 832 A.2d 962 (Pa. 2003)], and the General Assembly responded by enacting Megan's Law III on November 24, 2004. The United States Congress expanded the public notification requirements of state sexual offender registries in the Adam Walsh Child Protection and Safety Act of 2006, 42 U.S.C. §§16901-16945, and the Pennsylvania General Assembly responded by passing SORNA on December 20, 2011[,] with the stated purpose of "bring[ing] the Commonwealth into substantial compliance with the Adam Walsh Child Protection and Safety Act of 2006." 42 Pa. C.S. §9799.10(1). SORNA went into effect a year later on December 20, 2012. Megan's Law III was also struck down by our Supreme Court [in *Commonwealth v. Neiman*, 84 A.3d 603, 616 (Pa. 2013)]. However, by the time it was struck down, Megan's Law III had been replaced by SORNA.

[]

Thereafter, by decision and order dated July 19, 2017, our Supreme Court declared SORNA unconstitutional in *Commonwealth v. Muniz*, [164 A.3d 1189, 1193 (Pa. 2017), *abrogated on other grounds*, *Commonwealth v. Santana*, 266 A.3d 528, 536 (Pa. 2021)]. The General Assembly initially responded by enacting the Act of February 21, 2018, P.L. 27 (Act 10). Shortly thereafter, the General Assembly reenacted and amended various provisions of Act 10 by the Act of June 12, 2018, P.L. 140 (Act 29). The statutory provisions of Acts 10 and 29 are set forth at 42 Pa. C.S. §§9799.10-[9799].75, and our reference to SORNA II herein refers to those statutory provisions.

**(Footnote continued on next page…)**

Although not cited by any of the parties, Pa.R.A.P. 2591(a) states, in pertinent part: "On remand of the record the . . . government unit below shall proceed in accordance with the judgment or other order of the appellate court[.]" *See also* Section 706 of the Judicial Code, 42 Pa. C.S. §706 ("An appellate court may affirm [or] vacate . . . any order brought before it for review, and may remand the matter and . . . require the entry of such appropriate order . . . as may be just under the circumstances.").

In this regard, this Court has explained:

> "[I]t has long been the law in Pennsylvania that following remand, a lower court is permitted to proceed only in accordance with the remand order." *Commonwealth v. Sepulveda*, [144 A.3d 1270, 1280 n.19 (Pa. 2016)]. In *Levy v. Senate of Pennsylvania*, 94 A.3d 436 (Pa. Cmwlth.), *appeal denied*, [106 A.3d 727 (Pa. 2014)], which the Supreme Court cited with approval in *Sepulveda*, this Court explained: "Where a case is remanded for a specific and limited purpose, 'issues not encompassed within the remand order' may not be decided on remand. A remand does not permit a litigant a 'proverbial second bite at the apple.'" *Levy*, 94 A.3d at 442 (quoting *In re Indep*[*endent*] *Sch*[*ool*] *Dist*[*rict*] *Consisting of the Borough of Wheatland*, 912 A.2d 903, 908 (Pa. Cmwlth. 2006)).

*Marshall v. Commonwealth*, 197 A.3d 294, 306 (Pa. Cmwlth. 2018), *aff'd*, 214 A.3d 1239 (Pa. 2019); *see also Commonwealth v. Tick, Inc.*, 246 A.2d 424, 426 (Pa. 1968) (holding that a trial court's duty on remand is to "comply strictly with our mandate and such compliance require[s] the court to proceed in a manner consistent with the

---

*Ramos v. Pennsylvania Board of Probation and Parole* (Pa. Cmwlth., No. 582 C.D. 2019, filed January 23, 2020), slip op. at 8-9 n.7; *see also* Pa.R.A.P. 126(b)(1)-(2) ("As used in this rule, 'non-precedential decision' refers to . . . an unreported memorandum opinion of the Commonwealth Court filed after January 15, 2008. Non-precedential decisions . . . may be cited for their persuasive value.").

views expressed in our opinion"); *Commonwealth v. Null*, 186 A.3d 424, 429 (Pa. Cmwlth. 2018) ("[F]ollowing remand, the trial court below must comply strictly with this Court's mandate and has no power to modify, alter, amend, set aside, or in any measure disturb or depart from this Court's decision as to any matter decided on appeal.").

Thus, as outlined above, the Board's Order herein suffers from the same infirmity as the order that we previously vacated in *Ghaderi I*. *See also Almusa*, 298 A.3d at 556 (refusing to apply the provisions of Section 3113(f) relating to drug trafficking because the General Assembly "expressed that Section 3113 of [Chapter 31] was to apply prospectively" in Section 5). As a result, the matter must be remanded to the Board for reconsideration without regard to Section 3113 of Chapter 31.[5]

---

[5] To this end, based on the record, the Board could have denied the Doctor's petition under Section 15(a)(3) of the DO Act, 63 P.S. §271.15(a)(3), to which Doctor stipulated his violation. Specifically, Section 15(a)(3) provides: "The [B]oard shall have authority to refuse, revoke or suspend the license of a physician for *any* of the following reasons: . . . Conviction of . . . a crime involving moral turpitude, or a crime related to the practice of osteopathic medicine. Conviction shall include . . . a plea of *nolo contendere* . . . ." *Id.* (emphasis added). In the instant case, Doctor pleaded *nolo contendere* to a violation of Section 3126(a)(1) of the Crimes Code upon a patient in which the lack of consent was an element of the crime. Accordingly, the Board could have denied Doctor's petition under Section 15(a)(3) of the DO Act as a "a crime involving moral turpitude, or a crime related to the practice of osteopathic medicine." 63 P.S. §271.15(a)(3). *See, e.g.*, *McCoy v. Bureau of Professional and Occupational Affairs, State Board of Nursing* (Pa. Cmwlth., No. 488 C.D. 2009, filed September 9, 2009), slip op. at 16 ("We conclude further that the [b]oard did not abuse its discretion or arbitrarily fashion the penalty in this matter. The [b]oard was well within its discretion to actively suspend [the nurse's] license for no less than two years given the seriousness of her actions . . . when she attempted to misappropriate narcotics from her employer and the fact that [she] offered no explanation for her actions. As there was no flagrant abuse of discretion, we may not substitute judicial discretion for administrative discretion and interfere with the penalty imposed by the [b]oard. *Slawek* [*v. State Board of Medical Education and Licensure*, 586 A.2d 362 (Pa. 1991).]"); *see also Mehboob v. Attorney General*, 549 F.3d 272, 277 (3d Cir. 2008) ("Strict liability morality offenses, like indecent assault under Section 3126(a)(8), are crimes involving moral turpitude because of the community consensus that such offenses, which are
**(Footnote continued on next page…)**

Accordingly, we are constrained to vacate the Board's Order and remand this matter for reconsideration in accordance with the foregoing opinion.

_____
MICHAEL H. WOJCIK, Judge

---

enacted for the protection of the child, are inherently antisocial and depraved."); *Yurick v. Bureau of Professional and Occupational Affairs, Board of Osteopathic Examiners*, 402 A.2d 290, 292 (Pa. Cmwlth. 1979) ("We asserted the general rule in *Moretti v. State Board of Pharmacy*, [277 A.2d 516, 518 (Pa. Cmwlth. 1971)], that the element of fraud in a crime injects moral turpitude into consideration. We further defined moral turpitude as "'anything done knowingly contrary to justice, honesty, or good morals.'" It is apparent beyond doubt that [the pharmacist's] conviction for using the mails to defraud is a crime involving moral turpitude. *See Moretti*[.]").

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mahmoud Ghaderi, D.O.,       :
      :
      Petitioner   :
      :
      v.       : No. 23 C.D. 2024
      :
State Board of Osteopathic       :
Medicine,       :
      :
      Respondent :

## **O R D E R**

AND NOW, this 24<u>th</u> day of <u>December</u>, 2024, the Order of the Bureau of Occupational Affairs, State Board of Osteopathic Medicine (Board), dated December 15, 2023, is VACATED, and the matter is REMANDED to the Board for reconsideration in accordance with the attached Memorandum Opinion.

Jurisdiction is relinquished.

_____
MICHAEL H. WOJCIK, Judge